**In re APPLE IPHONE 3G PRODUCTS LIABILITY LITIGATION.**

**MDL No. C 09–02045 JW.**

United States District Court,
N.D. California,
San Francisco Division.

May 9, 2012.

Joseph Preston Strom, Jr., Mario Anthony Pacella, Strom Law Firm, Columbia, SC, for Plaintiff.

## ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION; DENYING AS MOOT MOTION TO DISMISS

JAMES WARE, Chief Judge.

Presently before the Court are: (1) Defendant AT & T Mobility's Motion to Compel Arbitration;[1] (2) Defendant Apple's Motion to Compel Arbitration;[2] and (3) Defendant Apple's Motion to Dismiss.[3] The Court conducted a hearing on April 9, 2012. Based on the papers submitted to date and oral argument, the Court GRANTS Defendants' Motions to Compel Arbitration and DENIES as moot Defendant Apple's Motion to Dismiss.

### A. *Background*

A detailed summary of the factual allegations and procedural history of this case may be found in the Court's April 2, 2010 Order, 728 F.Supp.2d 1065 (N.D.Cal. 2010).[4] The Court reviews the procedural history as relevant to the present Motions.

1. (Defendant AT & T Mobility LLC's Consolidated Motion to Compel Arbitration and to Stay Claims, hereafter, "AT & T Motion," Docket Item No. 266.)

2. (Apple Inc.'s Notice of Motion and Motion to Compel Arbitration; Memorandum of Points and Authorities in Support Thereof, hereafter, "Apple Motion," Docket Item No. 276.)

3. (Apple Inc.'s Notice of Motion and Motion to Dismiss Master Administrative Consolidated Fifth Amended Complaint; Memorandum of Points and Authorities in Support Thereof, hereafter, "Motion to Dismiss," Docket Item No. 275.)

4. (Order Granting Defendant AT & T Mobility, LLC's Motion to Dismiss Master Consolidated Complaint; Denying as Moot All Other Mo-

On April 2, 2010, the Court dismissed the Master Administrative Consolidated Amended Complaint [5] in this case as to both Defendant ATTM and Defendant Apple,[6] with prejudice, on the ground that it was preempted by the Federal Communications Act ("FCA"). (*See* April 2 Order at 1076–77.) The Court explained that this dismissal was as to "all state law causes of action," as well as Plaintiffs' cause of action for violation of the Magnuson–Moss Warranty Act ("MMWA"). (*Id.*) However, the Court granted Plaintiffs leave to amend to assert claims under the FCA. (*Id.*)

On May 25, 2010, 2010 WL 3119789, the Court denied Plaintiffs' Motion for Reconsideration of its April 2 Order.[7] In its May 25 Order, the Court explained, *inter alia,* that Plaintiffs had failed to present adequate grounds for reconsideration of the Court's findings in the April 2 Order regarding the status of "either Defendant [as] an indispensable party." (*See* May 25 Order at 3.) The Court explained that it had "fully considered the record and applicable law before deciding the matter" of indispensability, and further explained that the issue of indispensability "was raised in oral argument and Plaintiffs had an oppor-

tunity to respond, although they chose not to." (*Id.*)

On December 9, 2010, the Court granted Defendants' motion to stay proceedings in light of the Supreme Court's then-pending decision in *AT & T Mobility LLC v. Concepcion.*[8] The Court explained that a stay was warranted because the "Supreme Court's decision in [*Concepcion*] could likely simplify the legal questions in the present case." (*Id.* at 3.) Further, the Court explained that the stay "must apply equally to both [Defendant ATTM and Defendant Apple]," on the basis of the Court's prior ruling that "this case cannot proceed against Defendant Apple alone." [9] (*Id.* at 4.)

On April 27, 2011, the Supreme Court issued its decision in *Concepcion.*[10] On September 1, 2011, the Court lifted the stay in this case. (*See* Docket Item No. 242.) On September 9, 2011, Plaintiffs filed their Master Administrative Consolidated Fourth Amended Complaint. (Docket Item No. 243.) In their Master Administrative Consolidated Fourth Amended Complaint, Plaintiffs for the first time named only Apple, rather than both Apple and ATTM, as a Defendant. (*See id.*)

---

tions, hereafter, "April 2 Order," Docket Item No. 184.)

5. (hereafter, "MAC," Docket Item No. 44.)

6. The Master Administrative Consolidated Amended Complaint named both Apple, Inc. ("Apple") and AT & T Mobility, LLC ("ATTM") as Defendants. (*See, e.g.,* April 2 Order at 1066–67.)

7. (Order Denying Plaintiffs' Motion for Leave to File a Motion for Reconsideration; Granting Defendants' Motions for Extension of Time to File Response, hereafter, "May 25 Order," Docket Item No. 198.)

8. (Order Granting Defendants' Motion to Stay Proceedings; Granting Plaintiffs' Motion for

Leave to File Third Amended Master Administrative Complaint; Denying All Other Motions as Premature, hereafter, "December 9 Order," Docket Item No. 238.)

9. In its December 9 Order, the Court also granted Plaintiffs leave to amend to "add claims which were previously dismissed and potentially revived" due to a recent Ninth Circuit opinion. (*Id.* at 4–7 (citing *Shroyer v. New Cingular Wireless,* 622 F.3d 1035 (9th Cir.2010)).) The Court went on to explain that it "may ultimately distinguish *Shroyer* following amendment and again reject Plaintiffs' state law claims as preempted [by the FCA]." (*Id.* at 6–7.)

10. —— U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).

On December 1, 2011, 2011 WL 6019217, the Court dismissed Plaintiffs' Master Administrative Consolidated Fourth Amended Complaint for failure to join a necessary party—namely, Defendant ATTM—under Fed.R.Civ.P. 12(b)(7).[11] The Court explained that it had repeatedly found that, because "any adjudication of claims [in this litigation] as to Defendant Apple would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure," Defendant ATTM is an "indispensable party" without whom this case "could not proceed."[12] Accordingly, the Court ordered Plaintiffs to file an Amended Complaint in which Defendant ATTM was once again made a party to this action. (*Id.* at 7.) On December 19, 2011, Plaintiffs filed a Master Administrative Consolidated Fifth Amended Complaint naming both Apple and ATTM as Defendants. (hereafter, "5AC," Docket Item No. 261.)

Presently before the Court are Defendants' Motions to Compel Arbitration and Defendant Apple's Motion to Dismiss.

### B. *Standards*

 It is fundamental that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Samson v. NAMA Holdings, LLC,* 637 F.3d 915, 923 (9th Cir. 2011) (citations omitted). However, it is also well established that "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1011 (9th Cir.2004) (citation omitted). Congress created the Federal Arbitration Act ("FAA") to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate ... and place such

agreements on the same footing as other contracts." *Id.* (citation omitted). "A party to a valid arbitration agreement may 'petition any United States district court for an order .directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* at 1012 (quoting 9 U.S.C. § 4). The district court's "role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *See id.; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000). A court interpreting the scope of an arbitration provision should apply ordinary state law principles of contract construction. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, arbitration should only be denied where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Commc'n Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

### C. *Discussion*

#### 1. ATTM's Motion to Compel Arbitration

Defendant ATTM moves for an order compelling Plaintiffs to arbitrate all of their claims against it, on the grounds that: (1) Plaintiffs all entered into an

---

**11.** (*See* Order Granting Defendant's Motion to Dismiss with Leave to Amend at 7, Docket Item No. 260.)

**12.** (*Id.* at 4–5 (citing April 2 Order at 1072).)

agreement with it whereby they agreed to "resolve their disputes by arbitration on an individual basis"; and (2) the arbitration agreement is enforceable under the Supreme Court's decision in *Concepcion.* (ATTM Motion at 1–9.) Plaintiffs respond that: (1) Ninth Circuit caselaw precludes the compelled arbitration of their claim under the MMWA; and (2) Defendant ATTM has failed to submit "direct evidence" that every Plaintiff "accepted ATTM's terms of service ... when they became ATTM customers or entered into a new contract with the purchase of their iPhone 3G phones." [13] The Court considers in turn the arbitrability of Plaintiffs' MMWA claim and the issue of whether all Plaintiffs have accepted ATTM's terms of service.

**a. Arbitrability of the MMWA Claim**

At issue is whether Plaintiffs may be compelled to arbitrate their MMWA claim.

As a threshold matter, the Court observes that Plaintiffs do not contend that their claims, apart from their MMWA claim, may not be subjected to arbitration.

Rather, they *solely* contend that they may not be compelled to arbitrate their claim under the MMWA, without opposing Defendant ATTM's Motion to Compel Arbitration as to their other claims. Thus, the Court concludes that Plaintiffs do not oppose being compelled to arbitrate their other claims. [14] Accordingly, the Court only considers whether Plaintiffs' MMWA claim may be subjected to arbitration. [15]

 The MMWA "allows a consumer to bring a suit where he claims to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA] or under a written warranty, implied warranty, or service contract." *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir.2004) (internal quotations and citations omitted). "There are two types of written warranties under the [MMWA]: full warranties and limited warranties." *Id.* (citing 15 U.S.C. § 2303(a)). The MMWA "imposes minimum federal warranty standards" for "full" warranties and provides remedies for their breach. *Id.* (citing 15

---

**13.** (Plaintiffs' Opposition to AT & T Mobility LLC's Consolidated Motion to Compel Arbitration and to Stay Claims at 1–10, hereafter, "AT & T Opp'n," Docket Item No. 280.)

**14.** However, Plaintiffs assert—in one footnote—that "ATTM's arbitration agreement is invalid because enforcing the agreement would prevent Plaintiffs from vindicating their statutory rights under RICO and the [FCA]." (ATTM Opp'n at 12 n. 4.) Plaintiffs fail to develop this argument in any way, and fail to cite any legal authority in support of it. Thus, the Court deems this argument to have been abandoned by Plaintiffs. *See, e.g., Ghahremani v. Gonzales,* 498 F.3d 993, 997 (9th Cir.2007) (stating that "[i]ssues raised in a brief that are not supported by argument are deemed abandoned") (citation omitted). Regardless, the Court finds that Plaintiffs' argument is unavailing, insofar as there is clear Ninth Circuit authority stating that both RICO and FCA claims are arbitrable. *See, e.g., Lozano v. AT & T Wireless Servs., Inc.,*

504 F.3d 718, 726–27 (9th Cir.2007) (observing that the Supreme Court has "found RICO claims arbitrable," and holding that FCA claims are arbitrable).

**15.** The Court observes that Plaintiffs' contentions regarding the arbitrability of their MMWA claim are predicated on the Ninth Circuit's opinion in *Kolev v. Euromotors West/ The Auto Gallery,* 658 F.3d 1024 (9th Cir. 2011). However, on April 11, 2012—i.e., two days after the hearing was held in this matter-the Ninth Circuit issued an order in which it *sua sponte* withdrew that opinion and stated that it "may not be cited as precedent by or to this court or any district court of the Ninth Circuit." *See Kolev v. Euromotors West/The Auto Gallery,* 676 F.3d 867, No. 09–55963, 2012 WL 1194177, at *1 (9th Cir. Apr. 11, 2012). Accordingly, the Court considers whether Plaintiffs' MMWA claim may be subjected to arbitration without reference to the now-withdrawn *Kolev* opinion.

U.S.C. § 2304). However, the MMWA does not provide remedies for breach of "limited" warranties. *Id.* Instead, the MMWA allows consumers to "enforce written and implied warranties in federal court" by "borrowing state law causes of action." *Id.*[16] Where a plaintiff only alleges a violation of the MMWA insofar as a defendant "may have breached its warranties under state law," without an allegation that the defendant "otherwise failed to comply with [the MMWA]," it follows that "the federal claims hinge on the state law warranty claims." *Clemens v. Daimler-Chrysler Corp.*, 534 F.3d 1017, 1022 n. 3 (9th Cir.2008) (citing *Schimmer*, 384 F.3d at 405). Thus, a court's "disposition of the state law warranty claims determines [its] disposition of the [MMWA] claims." *Id.*[17]

Here, Plaintiffs bring causes of action for both: (1) Breach of Express Warranty and Implied Warranty of Merchantability; and (2) Violation of the MMWA.[18] In support of these causes of action, Plaintiffs allege as follows:

> Plaintiffs and Class members ... entered into agreements with Apple or its agents and received uniform warranties in connection with the purchase of [iPhones]. (5AC ¶ 101.) The iPhone 3G was accompanied by a written warranty that warrants the iPhone 3G from de-fects in materials and workmanship for 1 year. (*Id.* ¶ 102.) [Apple's] warranties and terms are attached hereto ... and incorporated herein by reference.[19] (*Id.*) ATTM similarly references and incorporates such warranties as to the iPhone 3G. (*Id.*) On its website, [ATTM] ... states 'Apple branded equipment, such as iPhone [sic], is covered by Apple's one year limited warranty ...' " (*Id.*) The written affirmations of fact, promises [and] descriptions as alleged in this Complaint [and] attached hereto are each a 'written warranty' as to the iPhone 3G ... and there exists an implied warranty for the sale of such products within the meaning of the [MMWA]. (*Id.* ¶ 113.)

Based on the allegations above, the Court finds that Plaintiffs' MMWA claim "hinges" upon their state law warranty claims. *Clemens*, 534 F.3d at 1022 n. 3. In particular, the Court finds that Plaintiffs' warranty-based claims all derive from Defendant Apple and ATTM's warranties, which—as pleaded by Plaintiffs—are expressly designated as "limited" warranties. (5AC ¶ 102.) Thus, Plaintiffs have no federal remedies under the MMWA for their warranty-based claims, as such remedies only exist in relation to "full" warranties. *Schimmer*, 384 F.3d at

---

**16.** The MMWA was intended by Congress "to supplement, not supplant, the rights and remedies provided by state law." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1319 (2d Cir.1990). The court in *Abrams* noted that the Federal Trade Commission, which is the agency designated by Congress to promulgate regulations under the MMWA, has stated that it "is absolutely clear that consumer rights and remedies under state law *would never be* affected by" the MMWA. *Id.* at 1317, 1320 (citing 42 Fed.Reg. 54004, 54005 (Oct. 4, 1977)) (emphasis in original).

**17.** *See also Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *9 (N.D.Cal. June 5, 2009) (observing that while the "MMWA provides a federal cause of action for [certain] state warranty claims," it "does not expand the rights under those claims," which means that "dismissal of the state law claims requires the same disposition with respect to an associated MMWA claim").

**18.** (*See* 5AC ¶¶ 100–117.) These are Plaintiffs' Fourth and Fifth Causes of Action, respectively.

**19.** (*See* 5AC, Ex. 1, Apple One (1) Year Limited Warranty, Docket Item No. 261–1 (specifying that the Apple warranty at issue is a "limited warranty").)

405. Therefore, it necessarily follows that Plaintiffs' MMWA claim is an attempt to "enforce written and implied warranties in federal court" by "borrowing" state law causes of action.[20] *Id.* However, because Plaintiffs' MMWA claim is derivative of their state law warranty claims, it follows that the Court's disposition of the MMWA claim must be determined by the Court's disposition of the state law warranty claims. *Clemens,* 534 F.3d at 1022 n. 3.

■ As discussed above, Plaintiffs do not contend that their state law warranty claims are not arbitrable; nor do they oppose Defendant ATTM's motion to compel arbitration of those claims. Thus, the Court finds that Plaintiffs' state law warranty claims are subject to arbitration.[21] Because Plaintiffs may be compelled to arbitrate their state law warranty claims, it follows that Plaintiffs may also be compelled to arbitrate their MMWA claim. *Clemens,* 534 F.3d at 1022 n. 3.

Accordingly, the Court finds that Plaintiffs' MMWA claim is subject to arbitration.[22]

### b. Plaintiffs' Acceptance of ATTM's Terms of Service

At issue is whether Plaintiffs accepted ATTM's terms of service, which include the arbitration provision at issue.

■ Upon review, the Court finds that Plaintiffs themselves allege that each of them accepted ATTM's terms of service. In particular, Plaintiffs allege that each of them "entered into a monthly service agreement for iPhone service." (5AC ¶¶ 9–22.) Plaintiffs also allege that "[a]t all relevant times, ATTM was the exclusive provider of the telephone and data service plans for the iPhone 3G throughout the United States and in California." (*Id.* ¶ 24.) Thus, it necessarily follows from Plaintiffs' own allegations that they each "entered into" a monthly service agreement with Defendant ATTM, insofar as ATTM was the "exclusive provider" of such plans for the iPhone 3G.[23] Indeed, if Plaintiffs had *not* entered into monthly service agreements with Defendant ATTM, it is unclear how they could have had standing to pursue a number of the claims against Defendant ATTM which they have maintained over the course of this litigation.[24]

---

**20.** The Court observes that while Plaintiffs state a claim for "Violation of the Magnuson-Moss Warranty Act," they do not contend that *any* specific section of the MMWA was violated. (*See* 5AC ¶¶ 109–117.) Thus, the Complaint is devoid of allegations that either Defendant "failed to comply" with the MMWA in any way other than by breaching warranties under state law. *Clemens,* 534 F.3d at 1022 n. 3.

**21.** *See, e.g., Hopkins & Carley, ALC v. Thomson Elite,* No. 10–CV–05806–LHK, 2011 WL 1327359, at \*5 (N.D.Cal. Apr. 6, 2011) (explaining that state law breach of warranty claims "directly involve matters of contract interpretation and are therefore arbitrable").

**22.** In light of the Court's disposition of this issue, and in light of the Ninth Circuit's withdrawal of the *Kolev* opinion, the Court does not reach Defendant ATTM's contention that *Kolev* is "clearly irreconcilable" with a more recent Supreme Court decision, and that the

Court should therefore regard *Kolev* as having been "effectively overruled" by the more recent Supreme Court decision. (ATTM Motion at 7–9 (discussing *CompuCredit Corp. v. Greenwood,* —— U.S. ——, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012)).)

**23.** Earlier iterations of Plaintiffs' Complaint made this allegation more clearly. (*See, e.g.,* Master Administrative Consolidated Third Amended Complaint ¶¶ 9–22, hereafter, "3AC," Docket Item No. 239 (alleging that each Plaintiff "entered into a monthly service agreement for iPhone service, exclusively provided by ATTM").)

**24.** (*See, e.g.,* MAC ¶¶ 78–89 (alleging that Defendant ATTM violated California's Unfair Competition Law, and that Plaintiffs "were injured in fact and lost money or property" as a result of Defendant ATTM's "acts of unfair competition," insofar as they purchased a "service plan" from ATTM).)

Plaintiffs' contention that Defendant ATTM is required to submit "direct evidence" that certain Plaintiffs "signed Wireless Service Agreements in conjunction with their purchase of Apple iPhone 3G mobile phones" is misguided. (ATTM Opp'n at 9–10.) In support of this contention, Plaintiffs rely on *Rosenthal v. Great Western Financial Securities Corporation*,[25] in which the California Supreme Court held that when a "petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy," the party seeking to compel arbitration "bears the burden of proving [the] existence [of the written agreement to arbitrate] by a preponderance of the evidence." *Id.* at 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061. However, the Court finds that Plaintiffs' reliance on *Rosenthal* is misplaced. In *Rosenthal*, the plaintiffs contended that there was "fraud in the inception of [the agreements providing for arbitration]," which led the court to address the question of how courts should decide "whether [an] arbitration agreement is void for fraud." *Id.* at 403, 410, 58 Cal.Rptr.2d 875, 926 P.2d 1061. The California Supreme Court answered that question by determining that: (1) "the court itself," rather than a jury, should decide whether such an agreement is void for fraud, and (2) the petitioner bears the burden of proving the existence of the agreement. *Id.* at 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061. Here, by contrast, Plaintiffs do not contend that there was fraud in the inception of their agreements with Defendant ATTM. Indeed, as discussed above, Plaintiffs themselves have alleged that they had a valid contract with Defendant ATTM throughout this litigation.[26]

Accordingly, the Court finds that Plaintiffs accepted ATTM's terms of service, including the arbitration provision at issue.

In sum, the Court GRANTS Defendant ATTM's Motion to Compel Arbitration.

**25.** 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996).

**26.** At the April 9 hearing, Plaintiffs expanded on their contentions regarding the contracts at issue in this case. In particular, Plaintiffs contended that some of their contracts with Defendant ATTM included different versions of the ATTM class action waiver. Plaintiffs conceded that the Supreme Court, in *Concepcion*, had examined one version of the ATTM arbitration agreement and found that it was not unconscionable. However, Plaintiffs contended that some of their contracts with Defendant ATTM included a class action waiver that: (1) was not examined by the Supreme Court in *Concepcion*; and (2) is unconscionable.

The Court observes that Plaintiffs' argument on this point is somewhat inchoate, and that Plaintiffs' contentions at oral argument appear to diverge from the contentions made in Plaintiffs' written opposition to Defendant ATTM's Motion to Compel Arbitration. Regardless, the Court observes that in *Concepcion*, the Supreme Court considered Defendant ATTM's wireless services agreement, and specifically considered the arbitration provision contained in that agreement. *Concepcion*, 131 S.Ct. at 1744. In particular, the Supreme Court considered a version of the ATTM agreement that "reflects revisions made in December 2006." *Id.* The Supreme Court determined that the ATTM agreement is enforceable, on the ground that the agreement "essentially guarantee[d]" that "aggrieved customers who filed claims" would "be made whole." *Id.* at 1753; *see also In re Apple & AT & TM Antitrust Litig.*, 826 F.Supp.2d 1168, 1175 n. 13 (N.D.Cal. 2011) (explaining that "the same conclusion [as to the enforceability of the ATTM arbitration agreement] has been reached by a number of other courts," post-*Concepcion*). Aside from the bare assertion at oral argument, Plaintiffs have offered no contentions or evidence suggesting that any of the agreements they entered into with Defendant ATTM had arbitration provisions that differed from the arbitration provision that was specifically examined by the Supreme Court in *Concepcion*.

### 2. Apple's Motion to Compel Arbitration

Defendant Apple moves for an order compelling Plaintiffs to arbitrate all of their claims against it, on the grounds that: (1) the arbitration clause in Plaintiffs' wireless services agreement with Defendant ATTM (the "WSA") is enforceable; and (2) equitable estoppel mandates arbitration of Plaintiffs' claims against Defendant Apple. (Apple Motion at 9–14.) Plaintiffs respond that: (1) their allegations against Defendant Apple do not rely upon, and are not intertwined with, the WSA; (2) under Ninth Circuit caselaw, equitable estoppel may not be applied in a case like this one; and (3) even if equitable estoppel could be applied in a case like this one, the factors permitting the application of equitable estoppel are not present in this case.[27] The Court considers each contention in turn.[28]

### a. Plaintiffs' Allegations Against Defendant Apple

Plaintiffs contend that they should not be compelled to arbitrate their claims against Defendant Apple, on the ground that their claims against Defendant Apple are "based on the failure of the Apple iPhone 3G to perform as promised due to Apple hardware or software flaws," which means that their claims against Defendant Apple have nothing to do with Defendant ATTM's 3G network or its WSA. (Apple Opp'n at 1–5.) Defendant Apple responds that the "core theory" of the current iteration of Plaintiffs' Complaint, as with previous iterations, is that both Defendants Apple and ATTM "allegedly misrepresented the speed of the iPhone 3G running on ATTM's 3G network, with the result that [Plaintiffs] allegedly overpaid for service under [the WSA] and for their phones."[29]

As a preliminary matter, the Court observes that it has repeatedly held, in relation to previous iterations of the Complaint, that Plaintiffs' allegations against Defendant Apple could not be "reasonably separate[d]" from Plaintiffs' allegations against Defendant ATTM, insofar as Plaintiffs' allegations necessarily targeted both "the sufficiency of ATTM's network infrastructure and the ability of Apple's iPhone 3G to operate within the network to deliver the promised 'twice as fast' performance."[30] Most recently, in considering the prior iteration of the Complaint, the Court expressly found that it, "like previous versions of the Complaint, is based on the core allegation that the 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." (December 1 Order at 5–6.) Thus, the Court considers the current iteration of the Complaint

---

**27.** (Plaintiffs' Response in Opposition to Defendant Apple, Inc.'s Motion to Compel Arbitration and Memorandum of Points and Authorities in Support Thereof at 1–7, hereafter, "Apple Opp'n," Docket Item No. 279.)

**28.** In their Opposition to Defendant Apple's Motion to Compel Arbitration, Plaintiffs do not discuss whether the arbitration clause in the WSA is enforceable, save for a footnote in which they contend that "the arbitration agreement [in the WSA] is invalid because enforcement of the agreement would prevent Plaintiffs from vindicating their statutory rights under RICO." (Apple Opp'n at 1 n. 1.) As with the similar footnote in Plaintiffs' Op-

position to Defendant ATTM's Motion to Compel Arbitration, Plaintiffs fail to develop this argument, and fail to cite any legal authority in support of it. As discussed above, however, the Court finds that the arbitration clause in the WSA is enforceable, and in particular finds that clear Ninth Circuit authority states that RICO claims are arbitrable.

**29.** (Apple Inc.'s Reply in Support of Motion to Compel Arbitration at 1, Docket Item No. 282.)

**30.** (*See* December 1 Order at 4–5 (citing April 2 Order at 1072).)

to determine whether it, like its predecessors, is based on the same "core allegation."

Here, Plaintiffs allege as follows:

Apple, in marketing for the iPhone 3G, consistently focused its advertising on the speed of the iPhone 3G. (5AC ¶ 2.) As its name implies, Apple represented that the iPhone 3G would consistently operate on faster "3G" networks, providing consumers greater speed and capability over previous generation iPhones. (*Id.*) Apple promised [that] the iPhone 3G would operate materially faster than its predecessors, but it did not. (*Id.* ¶ 6.) [Various representations] were designed to focus consumers on the specific characteristic that the iPhone 3G would provide superior data transfer performance over iPhones that operated only on an older network. (*Id.* ¶ 46.) Through the very name of the phone itself, Apple engaged in a uniform campaign to lead consumers to believe [that the] new phone is always, if not consistently, operating at 3G speeds, and thus able to provide, [sic] faster uploading and downloading transfer rates and [sic] thus was purportedly superior to its predecessor iPhones. (*Id.*)

Plaintiffs were injured and lost money or property as a result of these material misstatements and omissions of material fact. (5AC ¶ 66.) [31] Plaintiffs paid more to receive essentially the same, if not inferior, performance. (*Id.*) In addition to the $299 cost of the iPhone 3G, the cellular carrier ATTM charged consumers $10 per month for 24 months to sign up for 3G network coverage and a $28 additional equipment charge. (*Id.*) Customers were required to enter into a two-year data plan contract with the cellular carrier [i.e., the WSA] to use their iPhone 3G . . . [costing] a minimum of $286 on average per class member. (*Id.*)

 Based on the allegations above, the Court finds that the current iteration of Plaintiffs' Complaint, like the previous iterations, is based on the core allegation that the 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network. Further, the Court finds that Plaintiffs' allegations rely on the "two-year data plan contract" they entered into with Defendant ATTM—i.e., the WSA—insofar as Plaintiffs allege that they "were injured and lost money or property" pursuant to the WSA.[32] (5AC ¶ 66.) Thus, the Court finds that Plaintiffs' allegations against Defendant Apple in the present Complaint, as in previous iterations of the Complaint, necessarily implicate both Defendant ATTM's 3G network and the WSA.

Plaintiffs' contention that the "gravamen of [their] claims is not . . . the shortcomings of the ATTM 3G network," but rather their allegations regarding hardware and software flaws in the iPhone itself, is misguided. (Apple Opp'n at 1–2.) While it is true that the current iteration of the Complaint alleges that there were "performance problems with the iPhone 3G" that were due "either to a hardware flaw" in the iPhone itself or a "software flaw in the programmed algorithms," [33] similar allegations appeared in the earlier versions of

---

**31.** Plaintiffs' Master Administrative Consolidated Fifth Amended Complaint includes two paragraphs numbered "66." Here, the Court refers to the first of those paragraphs, which appears on page 21 of the Complaint.

**32.** Indeed, if Plaintiffs had not entered into the WSA, they would not have had *any* service for their iPhones, insofar as Defendant ATTM was the "exclusive provider of the telephone and data service plans for the iPhone 3G throughout the United States and in California." (5AC ¶ 24.) Thus, if Plaintiffs had not entered into the WSA, their iPhones would not have operated at any speed whatsoever.

**33.** (5AC ¶ 54.)

the Complaint. As the Court explained in its December 1 Order, "[p]revious iterations of Plaintiffs' Complaint also included allegations that hardware and software flaws in the iPhone 3G were responsible for the iPhone 3G's problems with connecting to the 3G network."[34] Indeed, as the Court went on to explain, the Court had specifically considered such allegations regarding flaws in the iPhone 3G in the course of its initial finding that "any adjudication of claims as to [Apple] would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure."[35]

Plaintiffs' contention that their allegations do not rely on the WSA, because their Complaint "alleges, as most, a 'but for' relationship" to the WSA, is also misguided. (Apple Opp'n at 4.) In support of this contention, Plaintiffs rely upon a recent decision in the *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation.*[36] In that decision, the court denied Toyota's motion to compel arbitration of plaintiffs' warranty claims against it on the ground that the agreements which provided for arbitration related solely to "details associated with taking delivery of a vehicle," and thus had nothing to do with "the performance of the vehicle" itself. *Id.* at 990. Thus, the court concluded that plaintiffs' claims were "unrelated to the customer agreements containing the arbitration provisions." *Id.* In particular, the court found that the agreements containing the arbitration provisions "explicitly disclaimed" any warranties, which, *inter alia,* led the court to find that the agreements were "unrelated to [plaintiffs'] claims for breach of warranty." *Id.* at 992.

In the course of this analysis, the court conceded that there was "[u]ndoubtedly . . . a 'but for' connection between the execution of the purchase agreement and the acquisition of the vehicle," though the court went on to find that this "but for" connection was insufficient to compel plaintiffs to arbitrate. *Id.* at 993. Here, by contrast, the WSA is not "unrelated" to Plaintiffs' claims against Defendant Apple, as discussed above. Moreover, as is also discussed above, the WSA does not "explicitly disclaim" any warranties, but rather expressly includes a limited warranty. (*See, e.g.,* 5AC ¶ 102.) Thus, the Court finds that *In re Toyota* is inapposite.

Accordingly, the Court finds that Plaintiffs' allegations against Defendant Apple necessarily target both the ATTM 3G network and the WSA.

### b. The Doctrine of Equitable Estoppel

At issue is whether Ninth Circuit caselaw precludes the application of equitable estoppel in circumstances such as this one, namely, circumstances in which a defendant that is not a signatory to the agreement providing for arbitration seeks to compel arbitration against a plaintiff that is a signatory to the agreement.

The Court observes that it recently addressed this exact issue in the *In re Apple & AT & TM Antitrust Litigation,*[37] where it concluded that Ninth Circuit caselaw allows equitable estoppel to be applied in these circumstances. Rather than repeat that analysis here, the Court—for the reasons stated in its order in that case—finds that the fact that Defendant Apple is not a signatory to the arbitration agreement does not preclude it from compelling Plaintiffs to arbitrate their claims via the doctrine of equitable estoppel.[38]

---

34. (December 1 Order at 6.)

35. (*Id.* at 6–7 (citing April 2 Order at 1075–77).)

36. 838 F.Supp.2d 967 (C.D.Cal.2012).

37. *See* 826 F.Supp.2d 1168 (N.D.Cal.2011).

38. On February 1, 2012, the Court certified for interlocutory appeal the issue of whether a non-signatory defendant may assert equitable

### c. Whether Equitable Estoppel May Be Applied Here

At issue is whether Defendant Apple satisfies the requirements to invoke the doctrine of equitable estoppel against Plaintiffs to compel arbitration.

■ A defendant that is a non-signatory to an agreement providing for arbitration may compel arbitration of claims by a plaintiff that is a signatory to such an agreement on the basis of equitable estoppel, so long as two requirements are met: (1) the subject matter of the dispute must be "intertwined with the contract providing for arbitration"; and (2) there must be a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *In re Apple & AT & TM Antitrust Litig.*, 826 F.Supp.2d at 1176–78 (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir.2009)).

■ Upon review, the Court finds that both of the requirements for equitable estoppel are met in this case. First, as to the "intertwining" of the claims, Plaintiffs themselves have contended throughout this litigation that their claims against De-fendant Apple and Defendant ATTM arise from their service agreements with ATTM.[39] Indeed, in the pre-*Concepcion* iterations of their Complaint, Plaintiffs repeatedly requested that the Court certify a single unified class of "[a]ll persons in the United States of America ... who purchased an iPhone 3G *and entered into an ATTM 3G service plan* between July 11, 2008 and the present."[40] Finally, as discussed above, the Court has repeatedly found that Plaintiffs' allegations—including the allegations in the current Complaint—are based on the core allegation that the ATTM 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network. From this, it necessarily follows that Plaintiffs' allegations are "intertwined" with their contracts with Defendant ATTM, insofar as Plaintiffs only had access to the ATTM 3G network because they had signed contracts with Defendant ATTM which granted them access to that network. Thus, the Court finds that Plaintiffs' claims against both Defendants are sufficiently "intertwined" for Defendant Apple to assert equitable estoppel against Plaintiffs.

Second, as to the relationship between Defendants Apple and ATTM, Plaintiffs themselves have alleged throughout this litigation that there is a "relationship" between those Defendants.[41] In the current

---

estoppel against a signatory plaintiff. *See In re Apple & AT & TM Antitrust Litig.*, No. C 07–05152 JW, 2012 WL 293703 (N.D.Cal. Feb. 1, 2012). On April 27, 2012, the Ninth Circuit denied Plaintiffs permission to appeal. (*See* Docket Item No. 570 in No. C 07–05152 JW.)

**39.** (*See, e.g.*, MAC ¶ 45 (alleging that Defendant ATTM "requires all iPhone 3G customers to sign up for [its] data connection plan," which caused injury to Plaintiffs, insofar as the "iPhone 3G and ATTM 3G network were faulty and failed to provide consistent connectivity on a 3G network"); 3AC ¶ 43 (same).)

**40.** (*See* MAC ¶ 30; 3AC ¶ 32 (emphasis added).) In the aftermath of *Concepcion*, Plain-tiffs ceased to request that the Court certify a class defined by the signing of an ATTM 3G service plan. (*See, e.g.*, 5AC ¶ 29 (defining the proposed class as consisting of "[a]ll persons in the United States of America ... who purchased an iPhone 3G after July 1, 2008").)

**41.** In determining whether there is a "relationship" between defendants for purposes of equitable estoppel, courts look to the allegations set forth in a plaintiff's complaint to assess whether the plaintiff "understood" the defendants to have a relationship. *In re Apple & AT & TM Antitrust Litig.*, 826 F.Supp.2d at 1178 n. 23 (citing *Ragone v. Atlantic Video at*

Complaint, for instance, Plaintiffs allege that Defendants Apple and ATTM entered into a "fraudulent scheme" whereby they conspired together to engage in "racketeering activity." (*See* 5AC ¶¶ 189–212.) In earlier versions of their Complaint, Plaintiffs further alleged that Defendants Apple and ATTM: (1) jointly "engaged in a campaign" to make misrepresentations to consumers; (2) "acted in concert with each other," making them "each legally responsible in some manner for the unlawful acts of the other"; and (3) have a "close relationship" predicated on a "joint agreement," "[t]hrough" which they acted to mislead consumers.[42] Thus, the Court finds that Plaintiffs have "understood" Defendants Apple and ATTM to have a relationship with each other sufficient for Defendant Apple to assert equitable estoppel against Plaintiffs. *Ragone,* 595 F.3d at 127.

In sum, the Court finds that because Plaintiffs have agreed to arbitrate any claim growing out of their contractual relationships with Defendant ATTM, and because Plaintiffs have asserted claims in this case that arise from their contractual relationships with Defendant ATTM in which they allege that both Defendants jointly subverted their rights under the contract, Plaintiffs are now estopped from refusing to arbitrate their claims against Defendants ATTM and Apple jointly.

Accordingly, the Court GRANTS Defendant Apple's Motion to Compel Arbitration.

---

*Manhattan Center,* 595 F.3d 115, 127 (2d Cir. 2010)).

**42.** (*See, e.g.,* MAC ¶¶ 4, 27, 45.) Plaintiffs made the same allegations in other pre-*Concepcion* iterations of their Complaint. (*See, e.g.,* 3AC ¶¶ 4, 25, 43 (also alleging that Defendants "engaged in a campaign" to make mis-

### D. *Conclusion*

The Court GRANTS Defendants ATTM and Apple's Motions to Compel Arbitration.[43]

This case is STAYED while Plaintiffs pursue their claims in arbitration.

The Clerk shall administratively close this file. Upon completion of the arbitration, any party may move to have this case reopened.

---

representations to consumers, "acted in concert with each other," and have a "close relationship" predicated on a "joint agreement").)

**43.** In light of this Order, the Court DENIES as moot Defendant Apple's Motion to Dismiss.