Filed 9/27/13  Frost v. LG Electronics CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LEAH FROST et al., | D062920 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2012-00098755-CU-PL-CTL) |
| LG ELECTRONICS MOBILECOMM U.S.A., INC., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.


Shearman & Sterling LLP, James Donato and Jiyoun Chung, for Defendant and Appellant.

Doyle Lowther LLP, William J. Doyle, John A. Lowther, James R. Hail and Samantha A. Smith; The Consumer Law Group and Alan M. Mansfield, for Plaintiffs and Respondents.

Leah Frost and Janielle Atherton filed a class action complaint against LG Electronics MobileComm U.S.A., Inc. (LG), alleging LG manufactured defective cellular phones. LG moved to compel arbitration of plaintiffs' claims based on an arbitration provision in wireless service contracts between plaintiffs and their wireless service provider (MetroPCS Communications, Inc. (MetroPCS)) that sold the phones to plaintiffs. The court denied the motion.

On appeal, LG contends the court erred in refusing to enforce the arbitration agreement under equitable estoppel principles. We reject this contention and determine the equitable estoppel doctrine is inapplicable under the circumstances of this case. We do not reach LG's alternate contention that the court erred in sustaining plaintiffs' evidentiary objections. Even assuming LG's supporting evidence was admissible, the court properly denied LG's motion to compel arbitration.

FACTUAL AND PROCEDURAL BACKGROUND

*Summary of Complaint Allegations*

LG manufactures and distributes a mobile smart phone known as the LG Optimus M. Soon after LG began distributing the phone in California, consumers noticed the phone would randomly freeze, crash, reset and/or power off (freezing defect), rendering the phone inoperable and unfit for its intended use and purpose. Customers complained to LG about this defect. Although LG was allegedly aware of this defect, it continued to manufacture and distribute the phones.

2

Plaintiffs Frost and Atherton each purchased an LG Optimus M phone in early 2011 from a MetroPCS dealer, which "acts as . . . LG's authorized agent and reseller." When they purchased the phones, each phone was accompanied by LG's one-year written warranty that the phone "will be free from defects in material and workmanship." However, shortly after their purchases, both plaintiffs began experiencing the freezing defect with their phones. They both repeatedly attempted to resolve the problem before filing the action, but were unsuccessful.

Specifically, within two weeks after Frost purchased the phone at a MetroPCS store, the phone manifested the freezing defect. Several months later, in June 2011, Frost returned to the MetroPCS store and complained about the defect. The store offered to allow her to purchase a refurbished replacement phone, but she declined because the replacement phone would have to be ordered and she was moving. Several months later, Frost went to another MetroPCS store to again complain about the defect. She then purchased a refurbished replacement phone from the store. However, the phone continued to randomly freeze, shut down, and reboot. In December 2011, Frost notified LG employees about the defect, but LG was unable or unwilling to remedy the problem.

Atherton likewise began experiencing the freezing defect shortly after she purchased the LG phone from an authorized MetroPCS seller. Atherton left a message with LG regarding the defect, but she never received a reply. The next month, Atherton went to a MetroPCS store to complain about the defect and then visited the store on a weekly basis in an attempt to resolve the problem. During the next several months,

3

Atherton received several replacement LG Optimus M phones, but she continued to experience the same freezing defect.

Based on these and other allegations, plaintiffs filed their complaint against the manufacturer (LG) seeking to represent a class of "California residents who purchased one or more LG Optimus M mobile phones from LG or its authorized retailers." Plaintiffs alleged six causes of action: (1) breach of express warranty; (2) breach of implied warranty; (3) violation of the Song-Beverly Warranty Act (Civ. Code, § 1792 et seq.); (4) violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.); (5) violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.); and (6) assumpsit and quasi-contract claims. Plaintiffs did not sue MetroPCS, but the complaint stated that "[w]henever this complaint refers to any act of defendant . . . , the reference shall [include] . . . any persons who acted as authorized agents and resellers for defendant of the phones in question."

In the contractual and statutory warranty causes of action, plaintiffs alleged that LG expressly and impliedly "warranted to plaintiffs and class members, these phones were effective, free from defects in materials and workmanship, and fit for their intended use," and that the purchasers "repeatedly tried to return their defective LG Optimus M phones to LG's authorized agents and resellers during the warranty period, only to receive replacement phones suffering from the same defect." Plaintiffs attached an excerpt of LG's one-year manufacturer's warranty. On the statutory misrepresentation cause of action, plaintiffs alleged that LG was aware of the freezing defect in the LG Optimus M phone and it nonetheless "actively concealed" that fact from plaintiffs and the class

4

members and continued to sell the phone to consumers who would not have purchased the phones if they had known of the defects. On each of the causes of action, plaintiffs sought various economic damages including the difference between the "value of the phones as promised and the value of the phones as delivered (essentially worthless)."

*Motion to Compel Arbitration*

Shortly after the complaint was filed, LG moved to compel arbitration based on an arbitration provision in MetroPCS's wireless service contract. In support, LG submitted the declaration of Hope Norris, MetroPCS's customer operations director. Norris stated that MetroPCS provides "pay-in-advance personal wireless services" to its customers and sells phone equipment for use on its wireless services. She stated that during the relevant times, each customer who purchased an LG Optimus M phone would receive a printed copy of the MetroPCS Terms and Conditions of Service Agreement (MetroPCS Service Agreement). Customers were notified that they accept the terms and conditions of the MetroPCS Service Agreement by activating or continuing to use MetroPCS's wireless services, and that the most recent version of the MetroPCS Service Agreement is contained on the company's Web site.

Norris attached to her declaration a sample MetroPCS Service Agreement, which states that it governs the "sale, use and delivery of wireless services" to the "purchaser or user" of the services. The Agreement contains detailed provisions regarding MetroPCS's wireless services, applicable rates, and payment policies. The MetroPCS Service Agreement expressly disclaims any express or implied warranty for the LG Optimus M *phone equipment*. The disclaimer provision states that MetroPCS does not manufacture

5

any of the phones, is not liable for any defect with the phone equipment, and that the phone and accessory equipment are instead covered by a "separate written warranty from the manufacturer [LG]."

This disclaimer provision reads as follows:

"<u>DISCLAIMER OF WARRANTY</u>:  WIRELESS DEVICES, ACCESSORIES, AND RELATED EQUIPMENT.  METROPCS DOES NOT MANUFACTURE WIRELESS DEVICES OR RELATED ACCESSORY EQUIPMENT.  YOUR WIRELESS DEVICES AND RELATED ACCESSORY EQUIPMENT COME WITH A SEPARATE WRITTEN LIMITED WARRANTY FROM THE MANUFACTURER.  STATEMENTS BY METROPCS OR METROPCS EMPLOYEES AND AGENTS REGARDING THE WIRELESS DEVICES OR RELATED ACCESSORY EQUIPMENT SHOULD NOT BE INTERPRETED AS A WARRANTY BY METROPCS.  METROPCS MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, ABOUT YOUR WIRELESS DEVICES OR ANY RELATED ACCESSORY EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  THIS DISCLAIMER DOES NOT DEPRIVE YOU OF ANY RIGHTS YOU MAY HAVE AGAINST THE MANUFACTURER.  WITHOUT LIMITATION, METROPCS WILL NOT BE LIABLE TO YOU IN CONNECTION WITH: (1) THE MANUFACTURER'S WARRANTY, (2) ANY ACTIONS OR OMISSIONS OF THE MANUFACTURER, OR (3) ANY MALFUNCTION OR FAILURE OF THE WIRELESS DEVICE OR RELATED ACCESSORY EQUIPMENT."

The MetroPCS Service Agreement also contains a limitation of liability provision, stating that "any failure, malfunction, defect" arising from "any device, handset, or other equipment or product supplied or provided by us, shall be your right to have MetroPCS repair, or have repaired, replace, or have replaced, such device, handset, or other equipment or product" and that damages with respect to product defects against

6

MetroPCS or "any supplier, agent, dealer, representative, carrier, vendor, or manufacturer" are limited to direct damages or the prorated monthly costs.

Additionally, the MetroPCS Service Agreement contains a broad arbitration clause with a class action waiver.  The front page of the MetroPCS Service Agreement contains a summary of the arbitration terms and states that by agreeing to the MetroPCS Service Agreement, "you waive your right to a jury trial in disputes *with MetroPCS*"; "your disputes *with MetroPCS* will be decided by an arbitrator"; and "you waive your right to institute or participate in class action litigation *against MetroPCS*."  (Italics added.)  The arbitration provision contained in the MetroPCS Service Agreement reads in part:

> "Any Dispute between *you and us* shall be resolved, upon the election of either you or us, by binding arbitration.  References in this provision to 'Dispute' shall be given the broadest possible meaning and shall include any dispute, claim or controversy arising from or relating to this Agreement or Services and/or Products provided under this Agreement, including but not limited to: (1) all claims for relief and all theories of liability, whether based in contract, tort, statute, regulation, ordinance, fraud, or misrepresentation; (2) all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception or its class action waiver); (3) all disputes that arose before this Agreement; (4) all disputes that arise after the termination of this Agreement; and (5) all disputes that are the subject of a putative class action in which no class has been certified.  References in this provision to 'us' include our parents, subsidiaries, affiliates, predecessors, successors, and assigns, and our and their directors, officers, employee and agents.  References in this provision to "you" include all beneficiaries of this Agreement and all users of the Services provided under this Agreement. . . ."  (Italics added.)

In moving to compel arbitration, LG acknowledged it was not a party to, and did not sign, the MetroPCS Service Agreement containing the arbitration clause. But LG argued it was entitled to enforce MetroPCS's arbitration agreement under "three separate and independent" theories: (1) the contract "evinces an intent to include suppliers such as [LG] in the scope of arbitration"; (2) plaintiffs are equitably estopped from denying the MetroPCS Service Agreement's arbitration clause because they allege "interdependent and concerted misconduct" by MetroPCS and LG; and (3) plaintiffs' allegations that MetroPCS acted as LG's authorized agent mean that LG can enforce the MetroPCS arbitration clause under agency principles.

Plaintiffs opposed the motion. First, they argued that LG had not submitted sufficient evidentiary foundation to show the existence or terms of the MetroPCS Service Agreement and/or that plaintiffs were parties to this agreement. In this regard, plaintiffs asserted numerous evidentiary objections to Norris's declaration and to the MetroPCS Service Agreement and other documents attached to Norris's declaration. Second, plaintiffs argued that LG was a nonsignatory to the agreement and could not enforce the agreement under any of the proffered exceptions.

In reply, LG submitted Norris's supplemental declaration in an attempt to remedy the evidentiary problems with her first declaration.

After a hearing, the court denied LG's motion to compel arbitration. The court declined to consider Norris's supplemental declaration and sustained many of plaintiffs' evidentiary objections to Norris's declaration and the attached MetroPCS Service Agreement. But the court also concluded that even assuming the MetroPCS Service

8

Agreement was properly before the court, LG failed to "carry its basic burden to demonstrate the existence of an agreement to arbitrate between LG and plaintiffs." In reaching this conclusion, the court found none of the proffered exceptions applicable.

DISCUSSION

LG contends the court erred in ruling that it did not provide a sufficient evidentiary foundation to establish the existence and terms of the MetroPCS Service Agreement and in concluding that it could not rely on the equitable estoppel doctrine to enforce the arbitration clause in the MetroPCS Service Agreement.[1] For purposes of this opinion, we assume the MetroPCS Service Agreement attached to Norris's declaration was properly before the court, but determine that the arbitration clause in this agreement is not enforceable by LG under the equitable estoppel doctrine.

I. *Governing Legal Principles*

The MetroPCS Service Agreement arbitration clause is governed by the Federal Arbitration Act (FAA). The FAA reflects a strong public policy in favor of arbitration and seeks to ensure " 'private agreements to arbitrate are enforced according to their terms.' " (*Stolt-Nielsen v. AnimalFeeds Int'l. Corp.* (2010) 559 U.S. 662 [130 S.Ct. 1758, 1773].) However, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744; *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1517-1518.) " 'Even the strong public policy in favor of arbitration

---

[1] Although LG raised two other potential exceptions to the signatory requirement, it did not reassert those exceptions on appeal. Thus, LG has waived those arguments.

does not extend to those who are not parties to an arbitration agreement . . . .' " (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 17 (*Jones*).)  " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.' " (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 648; *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 26.)

Under these principles, an entity seeking to compel arbitration must generally establish it was a party to an arbitration agreement before it can prevail on its motion. (*DMS Services, Inc. v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352; *J.S.M. Tuscany v. Superior Court* (2011) 193 Cal.App.4th 1222, 1236.)  However, there are exceptions.  On appeal, LG relies only on the equitable estoppel exception.  Under the FAA, state law governs the question whether a nonsignatory party may enforce an arbitration agreement under this exception.  (*Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1128 (*Kramer*); see *Arthur Anderson LLP v. Carlisle* (2009) 556 U.S. 624, 632.)

Under California law, a nonsignatory may enforce an arbitration agreement under the equitable estoppel doctrine under two circumstances:  "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract [citations], and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations

10

of the underlying agreement.' [Citation.]" (*Kramer*, *supra*, 705 F.3d at pp. 1128-1129, quoting *Goldman v. KPMG LLP* (2009) 173 Cal.App.4th 209, 219, 221 (*Goldman*).) A nonsignatory seeking to enforce an arbitration agreement has the burden to establish at least one of these circumstances applies. (*Jones*, *supra*, 195 Cal.App.4th at p. 16.)

The essential purpose of the equitable estoppel doctrine is to " 'prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement.' [Citation.]" (*J.S.M. Tuscany, LLC v. Superior Court*, *supra*, 193 Cal.App.4th at p. 1238.) The doctrine "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause *when he has consistently maintained that other provisions of the same contract should be enforced to benefit him*." (*Goldman*, *supra*, 173 Cal.App.4th at p. 220, fn. 5, italics added.) The doctrine thus precludes "a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage. [Citation.]" (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1714 (*Metalclad*).)

In reviewing a trial court's ruling on the equitable estoppel doctrine, we examine the plaintiffs' claims alleged in the complaint and any additional facts proffered by the parties in their moving and opposition papers. We conduct an independent review unless the underlying facts are disputed. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708; *Metalclad*, *supra*, 109 Cal.App.4th at

11

p. 1716.)  Because arbitration is contractually based, a court must narrowly construe the exceptions to the general rule that only signatories to an agreement may enforce the agreement.  (See *Murphy v. DirecTV* (9th Cir. 2013) 724 F.3d 1218, 1229 (*Murphy*).)

## II.  *Analysis*

### A.  *Reliance/Intertwined Prong of Equitable Estoppel Test*

The first prong of the equitable estoppel test requires the moving party to show the plaintiff is relying on the terms of the agreement containing the arbitration clause in asserting its claims or that the plaintiffs' claims against the nonsignatory are " 'intimately founded in and intertwined' " with this underlying contract.  (*Jones*, *supra*, 195 Cal.App.4th at p. 20; *Goldman*, *supra*, 123 Cal.App.4th at p. 221.)

LG did not meet its burden to show the applicability of this element.  Plaintiffs did not rely on the terms of the MetroPCS Service Agreement in asserting their claims against LG.  In their complaint, plaintiffs seek relief based on LG's express and implied warranties and allegations that LG knowingly sold an alleged defective product that was not fit for the purpose for which it was sold.  There are no allegations in which plaintiffs seek to enforce, or obtain relief under, the terms of the MetroPCS agreement for the alleged defective phones.  In fact, any such claim would be undermined by the MetroPCS Service Agreement's provision expressly stating that MetroPCS is not legally responsible for the phone equipment and that the consumer should look to the manufacturer's warranty for any relief.

12

LG does not argue that plaintiffs relied on the MetroPCS Service Agreement in asserting their claims in the complaint, but it argues equitable estoppel applies because plaintiffs' claims are "interwoven" with the MetroPCS agreement based on the close relationship between MetroPCS and LG with respect to the allegedly defective phones. In support, LG asserts:  "Optimus M phones at issue here have no useful life or purpose outside the MetroPCS service.  Plaintiffs purchased from MetroPCS a phone supplied by [LG] to work exclusively on MetroPCS's network.  Plaintiffs had to be MetroPCS subscribers with active MetroPCS wireless service in order for their [LG] phones to work.  On a day-to-day, minute-to-minute basis, each LG phone had to be connected to MetroPCS network in order to provide any of its basic functionalities, such as making and receiving phone calls, not to mention other important functionalities such as streaming video, texting, or providing location information and access to mobile 'apps' and the Internet."

Even assuming these facts were established (LG does not cite to any portion of the record supporting these assertions), this factual discussion misses the point.  It is not the relationship between the parties and the allegedly defective product that forms the basis for equitable estoppel.  Rather, it is the relationship between the *plaintiffs' claims* and the contract containing the arbitration provision that is the crux of the analysis.  (*Goldman*, *supra*, 173 Cal.App.4th at p. 221; *Metalclad*, *supra*, 109 Cal.App.4th at p. 1713.) Although it may be true that MetroPCS—as the actual seller and the alleged exclusive network provider for the phone—had an integral relationship with the product and with

13

the manufacturer of the product, plaintiffs did not bring their claims against LG based on those relationships. Instead, plaintiffs sued LG based on its own independent contractual (warranty) and statutory duties that are independent of the purchase agreement.

In this regard, this case is similar to *Kramer*, *supra*, 705 F.3d 1122. In *Kramer*, purchasers and lessees of Toyota vehicles brought a class action against the Toyota manufacturer, alleging the manufacturer violated California consumer statutes and breached warranties by allegedly including a defective braking system in the vehicles. (*Id.* at p. 1124.) Each class member signed a purchase agreement containing an arbitration clause with a Toyota dealer. (*Id.* at pp. 1124-1125.) Although the manufacturer was not a party or a signatory to those purchase agreements, the manufacturer sought to enforce the arbitration agreements under the equitable estoppel doctrine. Applying California law, the Ninth Circuit held the doctrine was inapplicable. (*Id.* at pp. 1128-1137.) The court reasoned that the plaintiffs' claims against the manufacturer were not founded on any provision in the purchase agreements, and instead arose based on the manufacturer's independent duties owed to the customers. (*Id.* a p. 1132.) The Ninth Circuit rejected the manufacturer's argument that the plaintiffs' claims were necessarily intertwined with the purchase agreements because the lawsuit was predicated on the fact that a vehicle purchase occurred. (*Ibid.*) The court explained that although the plaintiffs' causes of action presume a vehicle sale, the claims do not rely upon the existence of the purchase agreement and instead the causes of action arose under California consumer protection laws that were independent of the underlying dealer agreements. (*Ibid.*)

14

Similarly in this case, plaintiffs' complaint does not mention, reference, or rely on the MetroPCS Service Agreement or any provision in that agreement. As in *Kramer*, plaintiffs sued a product manufacturer and did not simultaneously seek to invoke the duties and obligations of the seller's purchase contract while seeking to avoid the arbitration provision in that same contract. Thus, the equitable estoppel doctrine is inapplicable.

We also find unavailing LG's argument that they are entitled to enforce the arbitration provision in the MetroPCS agreement because it is broadly worded. The arbitration agreement expressly applies to "any Dispute," including "any dispute, claim or controversy arising from or relating to this Agreement or Services, *and/or Products* provided under this Agreement." (Italics added.) However, as LG admits, this language applies only to MetroPCS and not to third parties such as LG. The fact that the arbitration provision governs disputes regarding products does not answer the question as to whether plaintiffs are equitably estopped from denying that the arbitration provision extends to LG, an admitted nonparty to the agreement.

LG's reliance on certain Apple iPhone litigation is misplaced. (See e.g., *In re Apple iPhone 3G & 3GS MMS Mktg & Sales Practices Litig*. (E.D. La. 2012) 864 F.Supp.2d 451; *In re Apple iPhone 3G Prods. Liab. Litig*. (N.D. Cal. 2012) 859 F.Supp.2d 1084; *In re Apple iPhone 3G Prods. Liab. Litig.* (N.D. Cal. 2011) 2011 WL 6019217.) Although these cases also involve mobile phones and the equitable estoppel doctrine as applied to a nonsignatory manufacturer, the plaintiffs' claims in those cases were different.

15

For example, in *In re Apple iPhone 3G & 3GS MMS Mktg & Sales Practices Litig.*, *supra*, 864 F.Supp.2d 451, the court permitted the nonsignatory manufacturer (Apple) to enforce an arbitration agreement contained in the plaintiffs' contract with their service provider (AT&T). (*Id.* at pp. 458-466.) Applying Louisiana law (and specifically declining to apply California law), the court reasoned that plaintiffs had admitted in papers filed with the court that their " 'primary claims' against Apple" were "based on AT&T's alleged contractual obligation to provide [a certain phone application]. . . ." (*Id.* at p. 461.) Based on this factual admission, the court found that "such claims meet the . . . intertwined-claims test, because Plaintiffs must 'rely on the terms of the [AT&T] written agreement in asserting [their] claims against the nonsignatory.' " (*Ibid.*)

Similarly, in *In re Apple iPhone 3G Prods. Liab. Litig.*, *supra*, 859 F.Supp.2d 1084, the plaintiffs brought claims against the cell phone service provider (ATTM) that had an arbitration clause in its agreement and also sued the nonsignatory manufacturer of the phone (Apple). (*Id.* at p. 1093.) The court held Apple was entitled to enforce the arbitration clause under the equitable estoppel doctrine. (*Id.* at p. 1097.) The court reasoned that the claims against Apple were not based on a manufacturing defect in the phone, and instead plaintiffs' complaint "[was] based on the core allegation that the [ATTM] 3G [service] network could not accommodate iPhone 3G users and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." (*Id.* at p. 1096.) The court emphasized that the plaintiffs had conceded "throughout this litigation that their claims against Defendant Apple . . . arise from their service agreements with ATTM." (*Ibid.*) Based on these admitted facts, the

16

court stated that "it necessarily follows that Plaintiffs' allegations [against Apple] are 'intertwined' with their contracts with Defendant ATTM . . . ."  (*Ibid.*)

In this case, unlike the two *Apple iPhone* cases cited by LG, plaintiffs have not relied on the underlying wireless service contract to bring their claims, and there are no facts showing plaintiffs' claims were "intertwined" with the MetroPCS agreement.  (See *In re Apple iPhone Antitrust Litig.* (N.D. Cal. 2012) 874 F.Supp.2d 889, 899 [equitable estoppel inapplicable because plaintiffs "have not contended that any of their claims arise from ATTM service contracts"].)

### B.  *"Concerted Conduct" Prong of Equitable Estoppel Test*

Even if a plaintiff's claims do not rely on, or are not "intertwined" with, the underlying contract containing the arbitration clause, a nonsignatory may enforce the contract under equitable estoppel principles if the plaintiff claims the signatory and nonsignatory parties acted jointly, *and* "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."  (*Goldman*, *supra*, 173 Cal.App.4th at p. 219.)

LG argues it satisfied this test because plaintiffs alleged "concerted conduct" by LG and MetroPCS.  In support, LG notes that the complaint is "replete with references to MetroPCS, contacts and communications that Plaintiff had with MetroPCS and actions taken or not taken by MetroPCS."  LG also directs us to the allegations that MetroPCS is one of "LG's authorized agents and resellers," and that all references to LG's acts "shall" include the acts of "any persons who acted as authorized agents and resellers for defendant of the phones in question."

17

However, even assuming these allegations can be characterized as claims that the two parties acted jointly, to successfully invoke equitable estoppel based on assertions of concerted conduct, a party has the burden to show that the plaintiffs are seeking relief for the joint conduct. "It is the relationship of the *claims*, not merely the collusive behavior of the signatory and nonsignatory parties, that is key." (*Goldman*, *supra*, 173 Cal.App.4th at p. 223; accord, *Murphy*, *supra*, 724 F.3d at pp. 1231-1232.) "[E]quitable estoppel applies when collusive behavior between signatories and nonsignatories is alleged, *but only where the plaintiff's claims are intertwined with the obligations imposed by the contract with the arbitration clause*." (*Goldman*, *supra*, 173 Cal.App.4th at p. 223, italics added; see also *In re Apple iPhone 3G Prods. Liab. Litig.*, *supra*, 859 F.Supp.2d at p. 1097.)

LG did not meet its burden to establish this element. Although there are several references in plaintiffs' complaint to MetroPCS pertaining to plaintiffs' efforts to repair and/or replace the phones, those facts do not reflect any allegation of concerted *wrongful* conduct by these two entities. Plaintiffs' causes of action do not seek relief for the inadequate repairs or the failure to provide substitute phones. Instead, the claims are founded on LG's alleged breach of its express and implied warranty and statutory obligations to provide a product that is suitable for the purpose for which it was sold. These claims are not based on any obligation established under the MetroPCS Service Agreement, or on any conduct committed jointly by the parties.

18

In its appellate briefs, LG argues that MetroPCS is deprived of the benefit of *its* bargain if we do not permit LG to enforce the MetroPCS Service Agreement. However, LG has no standing to assert the rights of a nonparty to the litigation. To the extent that MetroPCS employees may be called to testify as witnesses or to provide declarations in the litigation asserted against LG, this would occur regardless whether the matter is in an arbitration or a judicial forum. LG could have bargained to compel arbitration of claims asserted against it by including an arbitration provision in its written warranty, but it chose not to do so.

We also reject LG's argument that the trial court did not address the equitable estoppel issue in ruling on its motion. Based on our review of the transcript of the hearing and the order, we are fully satisfied the court understood LG's legal arguments and found the equitable estoppel doctrine to be inapplicable. In any event, because we have conducted a de novo review and the underlying facts do not appear to be disputed, the issue whether the trial court expressly reached the issue is not material to our determination.

DISPOSITION

Order affirmed.  Appellant to pay respondents' costs on appeal.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.