**LIFESCAN, INC., Plaintiff–Appellee,**

v.

**PREMIER DIABETIC SERVICES, INC., a Florida Corporation, Defendant–Appellant.**

No. 01–16124.

United States Court of Appeals, Ninth Circuit.

Argued March 12, 2003.

Submitted Nov. 4, 2003.

Filed April 13, 2004.

Leon M. Bloomfield, Oakland, CA, argued for the defendant-appellant; Richard S. Rachlin, North Palm Beach, FL, joined him on the brief.

Gary T. Lafayette, San Francisco, CA, argued for the plaintiff-appellee; Susan T. Kumagai, San Francisco, CA, joined him on the brief.

Before: KOZINSKI, GRABER and BERZON, Circuit Judges.

KOZINSKI, Circuit Judge:

What happens when a party to an arbitration is unable to pay its pro-rata share of the arbitration fees?

## Background

Premier Diabetic Services, Inc., is a Florida-based company that purchases diabetic products from manufacturers and resells them across the country to customers. In 1997, Premier contracted with Lifescan, Inc., a Johnson & Johnson subsidiary, to buy glucose monitoring strips and meters at a discount, on the condition that all products be sold to Medicare patients. In early 1998, Lifescan stopped shipping because it became convinced that Premier was selling to non-Medicare customers.

Pursuant to the terms of their agreement, the parties submitted the dispute to arbitration before a panel of three arbitrators from the American Arbitration Association (AAA). The parties participated in the initial stages of the arbitration process but, a few days before the final hearings, Premier announced that it would be unable to pay its pro-rata share of the arbitrators' estimated fees and costs for the remainder of the proceedings. The arbitrators gave Lifescan the option of advancing the fees owed by Premier so the final arbitration hearings could proceed, with an expectation that Lifescan would recoup the advance as part of any award. Lifescan refused and requested, instead, that the arbitration go forward, with Premier barred from presenting evidence. The AAA declined to proceed without Premier and suspended the proceedings.

Lifescan petitioned the district court to compel arbitration and order Premier to pay its pro-rata share of the fees. Lifescan also requested that the district court enter judgment against Premier on the underlying arbitration if Premier failed to pay the fees.

The district court granted Lifescan's petition to compel and ordered Premier to pay its pro-rata share of the fees. It also held that Premier's failure to pay amounted to its "failure, neglect, or refusal" to arbitrate, within the terms of section 4 of the Federal Arbitration Act (FAA).

## Analysis

 Arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation. *See Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc) (noting the benefits of arbitration). "[A]rbitration is a matter of

contract." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir.2003) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Congress crafted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate ... and place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (internal quotation marks and citations omitted). The FAA gives federal courts only limited authority to review arbitration decisions, because broad judicial review would diminish the benefits of arbitration. *See Kyocera,* 341 F.3d at 998.

▪ A party to a valid arbitration agreement may "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. By its terms, section 4 of the FAA limits the court's discretion; the court must order the parties to proceed to arbitration only in accordance with the terms of their agreement. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Thus, the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000).

Faithful to the statute, we first look to the agreement between Premier and Lifescan. In relevant part, the agreement states: "[A]ny and all unresolved disputes between the parties relating to this agreement shall be settled by binding arbitration.... Such arbitration shall be conducted in accordance with the then-current rules of the American Arbitration Association...." The parties thus incorporated the AAA Rules into their agreement. The AAA Commercial Arbitration Rules, in turn, recognize the arbitrators' discretion to interpret the scope of their authority: "The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." AAA Rule R–55. The rules also allow for flexibility, one of the noted benefits of arbitration. Rule R–45 gives arbitrators broad discretion to allocate fees and expenses among the parties. Rule R–51 empowers the arbitrator to reduce or defer administrative fees in the face of extreme hardship. Rule R–52 states: "All other expenses of the arbitration ... shall be borne equally by the parties, unless they agree otherwise or *unless* the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties" (emphasis added). Rule R–54 provides: "The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee."

▪ Lifescan argues that R–54 requires the parties to deposit fees before the arbitration begins, and that Premier violated R–54 by failing to do so. This is not quite correct; R–54 says only that the AAA *may* require a deposit as it deems necessary. Although the arbitrators originally requested an equal deposit from the parties, they changed their order when Premier informed them that it could not afford to pay. Nothing precluded the arbitrators from doing so, particularly in light of the other governing provisions of the AAA, which give arbitrators the authority to apportion fees and expenses as appropriate. *See supra.* The arbitrators exercised their discretion in this case by allowing the arbi-

tration to proceed on the condition that Lifescan advance the remaining fees. This may not be an ideal solution to the problem of a party's failure to pay its share of the fees, but it is well within the discretion of the arbitrators. There is, of course, no totally satisfactory solution in such circumstances, which is doubtless why the AAA rules give arbitrators the flexibility to make the best of a bad situation. Unlike the more inflexible Federal Rules of Civil Procedure, the AAA rules allow the arbitrators to adjust the payment of costs in light of circumstances. Under the terms of the FAA, there was no "failure, neglect, or refusal" by Premier to arbitrate in this case; the arbitration has proceeded pursuant to the parties' agreement and the rules they incorporated. There was therefore no basis for an order requiring Premier to pay the fees, or compelling arbitration.

▬ Lifescan contends, and the district court seemed to believe, that section 1284.2 of the California Code of Civil Procedure provides an independent basis of authority for requiring Premier to put up its pro-rata share of the fees. Not so. Section 1284.2 states: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator...." By its terms, section 1284.2 comes into play only if the parties' agreement is silent about the apportionment of fees. *See Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 112, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). The agreement between Premier and Lifescan is not silent because it incorporates the rules of the AAA, which *do* cover the apportionment of fees: They leave it up to the arbitrators.

Because the arbitrators acted well within their discretion, the district court erred in holding that Premier must pay its pro-rata share of the arbitration fees. We remand to the district court with instructions that it dismiss the petition.

REVERSED and REMANDED.