*514 OPINION OF THE COURT
Alan D. Scheinkman, J.
Petitioner Ralph Brandifino brings this special proceeding pursuant to CPLR 7503 (a) to permanently stay an arbitration currently pending between Brandifino and respondent CryptoMetrics, Inc. before the American Arbitration Association (AAA) entitled Brandifino v CryptoMetrics (AAA No. 19 166 00047 09) and grant him leave to institute an action at law based on “[r]espondent’s refusal or inability to pay the required fees” to the AAA that have been outstanding for over five months. Despite service of the petition and underlying papers on both CryptoMetrics and CryptoMetrics’ counsel in the arbitration, Anthony J. DiOrio, Esq. of Jackson Lewis, LLR the court is not in receipt of any answering papers from CryptoMetrics.
Factual Background
In his petition, Brandifino, a prior employee of CryptoMetrics who was employed from May 1, 2007 until his resignation on March 9, 2009,[1] admits that the dispute between the parties involving his right to certain compensation, is governed by the arbitration clause (§ 15 [a]) of his employment agreement effective March 19, 2008 (verified petition 1i 5). Indeed, Brandifino filed his claim with the AAA on April 6, 2009 (verified petition, exhibit D) and CryptoMetrics answered the claim on May 11, 2009 (id., exhibit E). He avers that
“[t]he Arbitration proceeded in accordance with the customary process for resolving disputes pursuant to the AAA Rules for Resolution of Employment Disputes until the parties agreed to mediate in mid-July, at which point the Arbitrator stayed the arbitration process pending the outcome of the mediation, which was scheduled for November 11, 2009” (id. If 10).
Based on correspondence dated October 26, 2009 from CryptoMetrics’ counsel, Anthony J. DiOrio, Esq. of Jackson Lewis, LLP to the AAA arbitrator, Ralph S. Berger, Esq. (care of Linda Hendrickson), the mediation that was scheduled for November 2009 was cancelled because Mr. DiOrio had not been able to reach his contact at CryptoMetrics, Robert Barra, the co-CEO of the company since mid-July and, therefore, the mediation *515 would not be fruitful. Mr. DiOrio further advised that he had since learned that Barra was no longer employed by the company, that Jackson Lewis had not been paid its legal fees, and that “CryptoMetrics [was] in some kind of trouble” but that he was unaware of the nature of the problem other than there was an issue over the control of CryptoMetrics (verified petition, exhibit G).
Petitioner avers that he believes that CryptoMetrics’ current troubles arise from shareholder discontent with Barra, a shareholder action against CryptoMetrics, and a recent investigation by the U.S. Department of Justice of both Barra and CryptoMetrics wherein the Justice Department seized CryptoMetrics’ corporate documents (verified petition HH 11-13). After the mediation was cancelled, the AAA’s Case Administrator Linda Hendrickson advised the parties by e-mail on October 22, 2009 that Mr. Berger would agree to continue with the arbitration once all outstanding bills and deposits had been paid (verified petition, exhibit F). Because the only outstanding fees were the ones owed by CryptoMetrics, petitioner’s counsel, Steven Eckhaus, Esq., Katten Muchin Rosenman, LLP, wrote to the arbitrator, Mr. Berger (care of Case Administrator Linda Hendrickson) on October 23, 2009 and requested that the arbitration be scheduled within 10 days so that petitioner would not be prejudiced by the permanent delay of the arbitration based on CryptoMetrics’ refusal or inability to stay current on the amounts owed to the AAA (id.). Petitioner also requested “that a default be entered ... if Respondent is unable to pay outstanding bills prior to the hearing date” (id.).
On October 26, 2009 Mr. DiOrio wrote to Mr. Berger (care of Ms. Hendrickson) and responded to petitioner’s October 23, 2009 letter by arguing that the arbitrator should deny petitioner’s request for a prompt hearing since petitioner
“is presently seeking to push through what would essentially become a ‘default hearing’ in light of the present circumstances. Such a request is obviously made in order to gain a position [petitioner] might not otherwise be entitled to (i.e. obtaining an award against the Company), all because the Company is apparently in some kind of trouble . . . the Company’s liability to [petitioner], if any, does not hinge upon the Company’s present troubles — therefore it makes little sense to push through the arbitration at this juncture. Cooler heads should permit the *516 smoke to clear and determine whether or not the Company will survive this predicament and live on to conduct business and defend itself in this claim” (verified petition, exhibit G).
On October 27, 2009 the arbitrator issued an order which provided that pursuant to the AAA’s rules,
“the AAA may require the parties to deposit sums for arbitrator compensation and administrative fees. The parties were directed to deposit such sums by June 11, 2009. The Association was advised that the requested deposits were not received by that date. Another request was made on August 31, 2009. Again, the Association advised that the fees were not received by that date. Therefore, in accordance with R-47 of the Rules, Suspension for NonPayment, all administration on this matter is suspended until such time as deposits requested are received” {id., exhibit H).
According to petitioner, he had paid his share of the fees and “[t]he outstanding fees, totaling $5,100, are solely those of the Respondent . . . .” (Verified petition 1122.) As evidence that it is respondent who owes the outstanding fees, petitioner attaches an AAA invoice dated October 28, 2009 in the amount of $5,100 sent to respondent {id., exhibit I).
Petitioner further avers that he has recently learned that Barra has been sued based on his default of a personal guaranty of loans totaling $2,440,000 made to CryptoMetrics in January and July 2009 {id. H 23). He states that because “[Respondent’s management is in utter disarray and counsel for the Respondent cannot even communicate with any individual decision maker at his client, Petitioner has no expectation that the Respondent will pay the bills required to continue the arbitration process” {id. 11 24). Thus, petitioner argues that because it is within the arbitrator’s discretion to suspend the arbitration based on respondent’s failure to pay the outstanding deposit, petitioner has no ability to force the continuance of the arbitration and “there is no reasonable likelihood that the arbitration will continue in the near future” {id. 11 28).
Based on the foregoing, petitioner requests that this court grant
“a judgment permanently staying . . . [the] arbitration . . . and allowing the Petitioner to begin an action in this Court for the relief he has been denied by virtue of the suspension of the arbitration pro *517 cess . . . Respondent, which is the subject of a Justice Department investigation and which, upon information and belief, has recently seen its shareholders revolt and oust the co-CEO, is in the throes of significant legal and organizational chaos. Petitioner’s rights to recompense for his grievances will be delayed and ultimately gravely threatened unless this Court intervenes” (verified petition 111).
Legal Discussion .
It is unclear the statute under which petitioner is seeking a permanent stay of the arbitration. In his notice of petition, petitioner cites to CPLR 7503 (a) which involves proceedings to compel arbitration. Then in his petition, he cites to CPLR 7502 (a),[2] which is a venue provision specifying where a special proceeding relating to an arbitration should be brought. CPLR 7503 (b)[3] is the provision authorizing a court to stay an arbitration, although by its terms, it does not appear applicable to this action since it only provides access to the stay by a party who has not participated in the arbitration, which is not the situation present here. Nevertheless, given the authority for a court to issue provisional remedies in connection with an arbitration (CPLR 7502 [c]), the court believes it has the authority to issue a stay of the arbitration, provided there is a basis for such a stay.
The obligation of a party to pay for the fees of an arbitration may be provided for by contract or, if there is no provision controlling the payment of fees, by the rules of the arbitration body *518 selected by the parties to arbitrate the dispute. The arbitration clause found in the employment agreement provides
“Arbitration. CryptoMetrics and [Brandifmo] agree that any dispute or controversy arising out of, relating to, or in connection with this Agreement... or the interpretation, validity, construction, performance, breach or termination thereof shall be settled by binding arbitration to be held in White Plains, New York ... in accordance with the National Rules for the Resolution of Employment Disputes then in effect of the American Arbitration Association . . . .” (Verified petition, exhibit A, § 15 [a].) “Costs and Fees. [Brandifmo] shall pay the initial arbitration filing fee (not to exceed $200), and CryptoMetrics shall pay the remaining costs and expenses of such arbitration (unless [Brandifmo] requests] that each party pay one-half of the costs and expenses of such arbitration or unless otherwise required by law . . . .)” (Id. § 15 [c].)
Because the parties provided that the arbitration would be governed by the National Rules for the Resolution of Employment Disputes then in effect of the American Arbitration Association, a review of those rules is also in order.
In this regard, the court takes judicial notice of the AAA’s Employment Arbitration Rules and Mediation Procedures (formerly named the National Rules for the Resolution of Employment Disputes), which the parties agreed would govern the arbitration of their dispute. Pursuant to rule 43, the AAA is empowered to “prescribe filing and other administrative fees to compensate it for the costs of providing administrative services.” With regard to the arbitrator’s compensation, rule 44 provides that
“[a]ny arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator’s fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose. Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.”
Rule 46 allows the AAA to “require deposits in advance of any hearing such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator’s fee, if any, and shall render an accounting and return any unexpended bal *519 anee at the conclusion of the case.” Rule 47, the rule invoked by the arbitrator in this proceeding, provides that
“[i]f arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.”
Rule 48 governs the .costs of arbitration and provides
“[^Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer promulgated plan or an individually-negotiated employment agreement or contract. . .
“For Disputes Arising Out of Employer-Promulgated Plans:
“Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator’s compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator’s compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator’s determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous . . .
“For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:
“The AAA’s Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiated employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.
“The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (vi) below, shall be borne *520 equally by the parties and are subject to reallocation by the arbitrator in the award.”
The issue in this proceeding was thoroughly examined in an article entitled No Pay No Play: How to Solve the Nonpaying Party Problem in Arbitration (Richard DeWitt, Rick DeWitt, 60 Disp Resol J 27 [Feb.-Apr. 2005] [hereinafter No Pay No Play]). In this article, the authors, Richard DeWitt and Rick DeWitt, describe the problem as a party “using nonpayment of deposits strategically as a means of ‘gaming’ the arbitration process” (id.). They explain that in these situations, the AAA often recommends that one party advances the adversary’s portion of the required deposits in order to end the stay with the understanding that such sums could be reimbursed as part of the final award, but he notes that “having to advance a nonpaying adversary’s deposit imposes an unfair burden . . . [which can] deplete a party’s resources and ability to prosecute its case . . . [and] involves substantial risk that the nonpaying party will not be able to pay the amount advanced or any eventual award” (id. at 28). In the context of proposing a contractual remedy,[4] the authors describe two other options that have been employed by the paying party to end the stalemate, namely: (1) the paying party’s filing of an action to obtain an order requiring the nonpaying party to advance the required deposit; or (2) the paying party’s filing of an action and discontinuing the arbitration based on a theory that the nonpaying party waived the right to arbitrate (id.).
According to the authors, the option of filing a suit requiring that the nonpaying party pay the required fees was not successful in a Ninth Circuit decision (Lifescan, Inc. v Premier Diabetic Servs., Inc., 363 F3d 1010 [9th Cir 2004]) whereas the other option of discontinuing the arbitration and filing suit based on a theory that the nonpaying party waived the right to arbitrate has been successful in another Ninth Circuit decision (Sink v Aden Enters., Inc., 352 F3d 1197 [9th Cir 2003]).
A recent decision from the Fifth Circuit followed the lead of Lifescan and reversed a District Court’s grant of a motion by the paying party to compel the payment of the deposit for arbitration by the nonpaying party (Dealer Computer Servs., *521 Inc. v Old Colony Motors, Inc., 588 F3d 884 [5th Cir 2009]). In Dealer, the Fifth Circuit court noted that
“[p]ayment of fees is a procedural condition precedent that the trial court should not review . . . conditions precedent to arbitration are for the arbitrator to decide . . . [and] payment of fees seems to be a procedural condition precedent set by the AAA . . . The arbitrators are within their discretion to ask one or the other party to pay the entire fee, and tax the fee as part of the award, or, alternatively, suspend the arbitration” (id. at 887).
In Dealer, as in Lifescan, the arbitrators had requested the paying party to front the deposit owed by the nonpaying party, but the paying party refused. Thus, because the parties had incorporated the AAA’s rules into their agreement, which gave the arbitrator discretion to require that the paying party front the fees, the court found that the nonpaying party could not be found to have “fail[ed], neglect[ed], or refus[ed] to arbitrate because the arbitrators had full discretion and flexibility to change allocation of fees, or suspend arbitration” (id. at 888). Accordingly, because there was no basis to compel the nonpaying party to pay the fees, the court advised that paying party’s remedy lies with the arbitrators (id.; see also Williams v Tully, 2005 WL 645943, *4, 2005 US Dist LEXIS 43532, *10 [ND Cal 2005] [court denied motion to compel the employer to pay the costs of arbitration or alternatively to lift the stay so that the employee could pursue his claims in court — i.e., “the AAA’s ruling as to whether plaintiff was required to advance arbitration fees was not final, and . . . plaintiff had not stated that he was unable to obtain the funds necessary to pay the arbitration fees”]).
There is contrary authority, however, from the Appellate Division, First Department. In Brady v Williams Capital Group, L.B (64 AD3d 127 [1st Dept 2009]), the First Department reversed a trial court’s dismissal of a petition pursuant to CPLR article 78 to compel the employer to pay the arbitration fees and granted the petition to the extent of directing the employer to pay the arbitration fees, subject to their later reallocation by the arbitrator. In that case, the AAA, contrary to the employment agreement between the parties which required that they split the fees of arbitration, sent a bill to the employer for $42,300 representing the entire advance payment for the arbitrator’s compensation in accordance with the AAA’s rules, which require the employer to pay the costs of the arbitration except for the *522 filing fee. The employer refused to pay the fee and demanded that the employee pay her share representing half of the fee, which the employee refused to do. After receiving no fee for five months, the AAA cancelled the arbitration, and the employee brought an article 78 proceeding to compel the employer to pay the fee or to compel the AAA to enter a default judgment against the employer for failing to pay the fee arguing that to require that she pay $21,150 when she had been unemployed for 18 months was prohibitively expensive. The trial court dismissed the proceeding because: (1) the parties’ agreement and not the AAA rules governed the allocation of payment of fees; and (2) the employee’s “rights under the antidiscrimination statutes were not substantially impaired by the requirement that she pay half of the arbitrator’s compensation” (Brady, 64 AD3d at 131).
The First Department framed the issues on appeal as follows (1) “whether the AAA’s ‘employer pays’ rule should supersede the ‘fee splitting’ provision of the parties’ arbitration agreement with regard to the arbitrator’s compensation”; and (2) “whether the fee-splitting provision should be invalidated as violative of public policy in this instance” {id. at 129). The Court answered the first question in the negative and the second question in the affirmative holding:
“the risk of prohibitive arbitration cost was more than speculative. Indeed, the record is abundantly clear that the arbitration clause requiring [the employee] to share half the cost of the arbitrator’s compensation would require her to bear a significant arbitration cost — $21,150. While this amount alone is substantial, it did not include other arbitration fees and costs that would have to be borne out equally by the parties. Moreover, [the employee] has provided sufficient information about her precarious financial situation . . . [to] demonstrate] that she was not in a position to afford the cost associated with the arbitration, and was therefore effectively precluded from vindicating her rights in the AAA forum” {id. at 135).
Based on the foregoing, there is precedent for this court to issue an order compelling CryptoMetrics to pay its share of the arbitration fees; however, that is not the relief requested by petitioner. Instead, petitioner is seeking a stay of the arbitration so that he may pursue an action at law against respondent based on its default in payment of the arbitration fees. While *523 petitioner has provided no authority for this proposition, based on the No Pay No Play article, there is some authority for a finding that CryptoMetrics waived its right to arbitrate based on its failure to pay the deposit required by the AAA and the parties’ agreement. Indeed, based on the language of the parties’ agreement, it would appear that to the extent the AAA is requiring that the parties share in the costs of the arbitration, that would run counter to the agreement of the parties, which was for petitioner to pay the filing fee and for respondent to pay the remaining costs.
Sink (supra) involved an arbitration provision in an employment agreement. The provision required the employer to front all of the costs of the arbitration. The employee initially brought suit in the United States District Court for the District of Oregon alleging that the employer breached the employment agreement by failing to make the required payments and stock options to the employee. The employer moved to stay the action and compel arbitration, which was granted. Thereafter, the employer defaulted in making the required arbitration payments. The arbitrator in that case, however, unlike here, agreed to enter a default against the employer. The employee thereafter moved in the District Court to, inter alia, lift the stay and to enter a default judgment based on the arbitrator’s order of default. The employer opposed and advised the District Court Judge that it now had the funds to pay for the arbitration and requested that the action be referred back to arbitration. The District Court denied the motion finding that the employer had defaulted in the arbitration proceeding and had waived its right to arbitrate (Sink, 352 F3d at 1199). The District Court reasoned that denying the employer’s application to once again compel arbitration comported with the provisions of the Federal Arbitration Act and that the employer’s reading would “allow a party refusing to cooperate with arbitration to indefinitely postpone litigation . . . [with] the sole remedy available to a party prejudiced by a default ... a court order compelling a return to arbitration” (id. at 1201). Affirming the District Court, the Ninth Circuit held
“Aden’s [the employer’s] failure to pay the required costs of the arbitration was a material breach of its obligations in connection with the arbitration. Aden had a fair chance to proceed with arbitration, but Aden scuttled that prospect by its non-payment of costs, impeding the arbitration to the point where *524 the arbitrator cancelled the arbitration and declared Aden in default. In these circumstances, we hold that § 4 of the FAA does not compel a district court to return the parties once more to arbitration” (id.; see also Stowell v Toll Bros., 2007 WL 30316, 2007 US Dist LEXIS 287 [ED Pa 2007] [District Court denied motion to compel arbitration finding that employer had waived right to arbitration by defaulting in paying the AAA’s $750 filing fee, which caused the AAA to advise the parties that it would not administer the case]).
The court is cognizant of the law’s preference to require parties to abide by their arbitration agreements and that a court should not find a waiver absent a clear showing of an intent to abandon the arbitration process. However, when the purpose of arbitration — to provide a cost-effective and efficient means of resolving a claim — is thwarted by a party’s default in failing to pay the required fees — the court believes that the paying party’s right to have its dispute adjudicated and not to be unreasonably held at the mercy of a nonpaying party outweighs the strong presumption in favor of arbitration, provided there is a factual basis for a finding of waiver. Here, the payment of the deposit fee was originally due on June 11, 2009 (verified petition 1i 22). The AAA sent another notice concerning the outstanding amount of deposit due on August 31, 2009 and again on October 28, 2009 (id., exhibit I). After CryptoMetrics failed to participate in the agreed mediation and in response to Brandifino’s request that the arbitration not be delayed by CryptoMetrics’ failure to pay its share of the fees and that a prompt arbitration be held at which CryptoMetrics’ default may be entered, the arbitrator exercised his right under rule 47 to suspend the arbitration until the payment of the $5,100 deposit. It is important to note that there is no evidence that the arbitrator suggested that petitioner front respondent’s share of the deposit owed in order to lift the stay that the arbitrator was imposing. While the reason for CryptoMetrics’ failure to pay may be the result of internal dissension (i.e., no clear leadership and management control) and/or the Justice Department investigation, the company’s upheaval cannot trump petitioner’s right to seek redress. Nevertheless, because the court did not receive any papers in opposition to this petition and “[i]n light of this presumption [in favor of arbitration] ... a waiver of arbitration ‘is not to be lightly inferred’ ” (Kramer v Hammond, 943 F2d 176, 179 [2d Cir 1991]), the court is not prepared to make a *525 finding of waiver by CryptoMetrics without giving it one last chance to express its intent to arbitrate in accordance with the parties’ agreement. As such, the court shall grant petitioner’s petition unless the court receives notification, within 20 days of this decision and order, that respondent has paid the $5,100 due the AAA, in which case the petition shall be denied.
Conclusion
Accordingly, for the reasons stated, it is hereby ordered that the petition by Ralph Brandifino for an order staying the arbitration currently pending before the American Arbitration Association entitled Brandifino v CryptoMetrics (AAA No. 19 166 00047 09) so that he may bring an action at law to enforce his employment agreement is granted unless respondent CryptoMetrics, Inc. pays the outstanding deposit of $5,100 due to the American Arbitration Association within 20 days of this decision and order and provides evidence of such payment to this court, in which case, the petition shall be denied.

. Brandifino claims that his resignation was for “Good Reason” under the termination provisions of his employment agreement (verified petition 116).

. “[a] special proceeding shall be used to bring before a court the first application arising out of an arbitrable controversy which is not made by motion in a pending action . . . The proceeding shall be brought in the court and county specified in the agreement. If the name of the county is not specified, proceedings to stay or bar arbitration shall be brought in the county where the party seeking arbitration resides or is doing business, and othe[r] proceedings affecting arbitration are to be brought in the county where at least one of the parties resides or is doing business or where the arbitration was held or is pending.”

. CPLR 7503 (b) provides
“Subject to the provisions of subdivision (c), a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation under subdivision (b) of section 7502.”

. The proposal is the inclusion of a waiver provision in the arbitration clause which would provide that a party’s “failure to pay a required deposit of arbitration costs and fees by either party constitutes a waiver by that party of the right to be heard, to present evidence, to cross-examine witnesses, and to assert counterclaims in the arbitration” (No Pay No Play at 29).