FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SEAN TILLMAN,
               *Plaintiff*,

               v.

RENEE TILLMAN, AKA
Renee Chicino,
          *Defendant-Appellant*,

RHEINGOLD, VALET,
RHEINGOLD, SHKOLNIK &
MCCARTNEY,
          *Defendant-Appellee.*

No. 13-56624

D.C. No.
2:09-cv-02017-VAP-RC

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted December 9, 2015
Pasadena, California

Filed June 15, 2016

Before: Ronald M. Gould and Marsha S. Berzon, Circuit Judges and George Caram Steeh III,[*] Senior District Judge.

Opinion by Judge Berzon

## SUMMARY[**]

### Arbitration

The panel reversed the district court's dismissal of a legal malpractice case, where the parties had entered into a valid arbitration agreement but the arbitrator terminated arbitration proceedings without entering judgment because one party ran out of funds to pay for its share of the arbitration, and remanded.

Renee Tillman sued her law firm; the retainer with the firm contained an arbitration clause; arbitration proceeded until Tillman ran out of funds; and the arbitration was then terminated without entry of an award or judgment.

The panel held that the Federal Arbitration Act did not require dismissal where Tillman's case "has been had in accordance with the terms of the [arbitration] agreement," 9 U.S.C. § 3, and the district court appropriately excused

---

[*] The Honorable George Caram Steeh III, Senior District Judge for the U.S. District Court for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Tillman's failure to pay for arbitration on the grounds of financial incapacity. The panel reversed the district court's dismissal of Tillman's case and remanded to the district court with instructions to allow Tillman's case to continue in court.

## COUNSEL

Stephen C. Johnson (argued) and Arlene M. Turinchak, Dempsey & Johnson P.C., Los Angeles, California, for Defendant-Appellant.

Stephen M. Caine (argued), Frances M. O'Meara, and Holly M. Teel, Thompson Coe & O'Meara, LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

BERZON, Circuit Judge:

When two parties have entered into a valid arbitration agreement, the Federal Arbitration Act requires federal courts to stay lawsuits between them until the arbitration is resolved and then to enforce any arbitration award.  Our question is how a federal court is to proceed where one party runs out of funds to pay for its share of the arbitration and the arbitrator thereupon terminates the arbitration proceedings without entering an award or judgment or otherwise resolving the case.

Here, Renee Tillman sued her law firm, Rheingold, Valet, Rheingold, Shkolnik & McCartney ("the firm" or "the Rheingold firm").  Tillman's retainer with the firm contained an arbitration clause, which the firm invoked.  Arbitration proceeded for a time, until Tillman ran out of funds.  The arbitration was then terminated.  The parties disagree about what should now happen to Tillman's federal court case against the Rheingold firm.

Our conclusion is that Tillman's case "has been had in accordance with the terms of the agreement," so it is no longer appropriate to stay the proceedings below.  *See* 9 U.S.C. § 3; *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2004).  Further, the district court appropriately excused Tillman's failure to pay for arbitration on the grounds of financial incapacity.  Finally, under these circumstances, we hold, the FAA does not require dismissal of Tillman's case; instead, Tillman's case should go forward in federal court.  We therefore remand the case with instructions to allow it to proceed.

# I

Renee Tillman's husband, Tim Tillman ("Tim"), died in a truck accident in 2002. Tillman hired the Rheingold firm to represent her. The firm filed a wrongful death suit on Tillman's behalf against the manufacturer of the truck Tim was driving. Tillman won the suit and was awarded about eight million dollars, an amount later reduced on appeal.

Tillman and the Rheingold firm were then sued by Sean Tillman ("Sean"), Tim's son from a prior marriage. Sean asserted that Tillman and the firm wrongfully excluded him from the suit against the truck manufacturer, alleging they were negligent and had violated a California requirement that an heir suing in a wrongful death action join all other known heirs. Sean's claims against the Rheingold firm were dismissed but his action against Tillman proceeded. Tillman, in turn, filed a complaint against the firm, alleging it had committed malpractice by not including Sean in the wrongful death action and by failing to advise her of the rights of Tim's other heirs.

In response to Tillman's complaint, the firm moved to compel arbitration, citing the arbitration clause in its retainer agreement with Tillman. Tillman filed her response to the motion late. As a result, the district court declined to consider her response. The court granted the firm's motion to compel arbitration and stayed the federal court proceedings between Tillman and the firm.

Tillman and the firm began arbitration in New York under the rules of the American Arbitration Association ("AAA"), as provided in the retainer agreement. During the arbitration, Tillman objected to several aspects of the arbitration as

unnecessarily increasing costs. In particular, she challenged the need for the arbitration to include a "case-within-a-case" adjudication, in which the arbitrator would rehear witnesses and evidence presented in the underlying wrongful death action.

The arbitrator nonetheless scheduled additional dates for a case-within-a-case adjudication. Tillman borrowed money, and her counsel in the arbitration agreed to front certain costs. Nevertheless, Tillman was ultimately unable to provide the required deposit of $18,562.50 the AAA asked for as a condition of continuing the proceedings.

The AAA then "inquir[ed] as to whether [the firm was] willing to cover th[e] deposit," but the firm declined. Tillman then requested that the AAA require the firm to pay the deposits going forward, under AAA rules authorizing interim relief. The arbitrator responded that it did "not intend to decide the motion for interim relief" until the deposits had been paid; set a deadline for Tillman to submit the funds; and ultimately terminated the arbitration due to the missing deposits.

The Rheingold firm returned to the district court. It moved for the court to lift its stay and to dismiss Tillman's complaint pursuant to Federal Rule of Civil Procedure 41(b), which provides that, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." According to the firm, Tillman's failure to pay her deposits was a violation of the court's order compelling arbitration. Tillman objected, arguing that she had fully participated in the arbitration and done "everything in her power" to proceed before the arbitrator. Tillman also argued that the firm was

at fault as well for the arbitration's termination, because, under the AAA rules, it could have paid to continue the arbitration but chose not to.

Before ruling on the Rule 41(b) motion, the district court allowed Tillman to submit evidence confirming that her financial situation precluded her from paying her share of the arbitration fees. Tillman did so, submitting a declaration with various exhibits describing how the money from the initial settlement had been exhausted — through a combination of legal fees, payment of outstanding debts, educational payments and set-asides for several family members, vehicle purchases, home improvements, investment losses, and gambling losses. After reviewing the evidence, the district court found Tillman was indeed "unable to pay for her share of arbitration." It therefore declined to dismiss her case under Rule 41(b) and instructed the parties to further brief the issue of how to proceed given Tillman's inability to pay the arbitrator's fees.

The district court ultimately dismissed the case. According to the district court, because the AAA's rules required Tillman and the firm to bear the costs of arbitration equally and allowed the arbitrator to suspend the proceedings, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, deprived the district court of authority to hear "the claims that would have been subject to the arbitration agreement," and dismissal was required.

Tillman timely appealed.

## II

"[C]ourts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)) (internal quotation marks removed). When a party petitions a court to compel arbitration under the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan*, 363 F.3d at 1012. Here, there is no dispute that both these conditions were initially met, and no challenge to the original referral of the dispute to arbitration.

Although the validity of the arbitration agreement between Tillman and the Rheingold firm is not at issue, it is not immediately clear what it means to "enforce the agreement," *id.*, in the context before us. The firm seeks to lift the district court's stay of proceedings and to dismiss Tillman's complaint. We agree that it is appropriate to lift the stay but conclude that Tillman's case should be allowed to proceed.

### A.

The Rheingold firm, invoking the FAA, originally sought to stay the district court proceedings and compel arbitration. The FAA requires courts to stay court proceedings on issues subject to arbitration "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

But what does it mean for an arbitration to "ha[ve] been had in accordance with the terms of the agreement"? *Id.* Here, arbitration was "had" in the sense that the parties engaged in arbitration until the arbitrator terminated those proceedings. The arbitration was terminated because Tillman could no longer pay the arbitrator's fee; the arbitrator did not enter any sort of award or judgment. The parties disagree about whether, in these circumstances, her arbitration "has been had in accordance with the terms of the agreement."

Our decision in *Lifescan* goes a long way toward resolving this dispute. *See* 363 F.3d at 1010. In *Lifescan*, two parties, Premier and Lifescan, submitted a dispute to arbitration under the AAA's rules. *Id.* at 1011. Shortly before the final arbitration hearings, Premier advised that it was not able to pay its share of the arbitrators' costs. *Id.* The arbitrators gave Lifescan the option of paying Premier's share. *Id.* When Lifescan declined, the AAA suspended the proceedings. *Id.*

Lifescan petitioned the district court to compel arbitration under the FAA. *Id.* On appeal, we directed that the petition be dismissed. *Id.* at 1013. As the AAA's rules allowed the arbitrators to suspend the proceedings when Lifescan declined to pay Premier's costs, we concluded, "the arbitration ha[d] proceeded pursuant to the parties' agreement." *Id. Lifescan* left matters there. It did not treat the suspension of arbitration proceedings as an award in favor of one party or the other, as no award had issued. *Id.*

The Tenth Circuit recently reached a similar conclusion in *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287, 1293–94 (10th Cir. 2015), *cert denied* 136 S. Ct. 373 (Oct. 19, 2015). *Cahill* also concerned a scenario in which an

arbitration under the AAA's rules was terminated for non-payment of the AAA's fees. *Id.* at 1294. The Tenth Circuit held that because the AAA's rules allowed for such a termination of the proceedings, "the arbitration 'ha[d] been had in accordance with the terms of the agreement,' 9 U.S.C. § 3, removing the § 3 requirement for the district court to stay the proceedings." *Id.*

We conclude that Tillman's arbitration likewise "has been had in accordance with the terms of the [arbitration] agreement." The retainer agreement between Tillman and the Rheingold firm explicitly incorporated the AAA's rules. While the numbering of some of the AAA's rules has changed since *Lifescan*, all the relevant provisions remain the same. *See* Am. Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures* (2013). Current Rule R-53 allows the AAA to prescribe fees and gives it the sole discretion to reduce fees in the event of hardship. *Id.* at 29. Rule R-56 allows the AAA to require the parties to pay deposits in advance in "such sums of money as it deems necessary." *Id.* at 30. Rule R-57 states that in the event of nonpayment, the arbitrator may "limit[] a party's ability to assert or pursue their claim," and "may order the suspension of the arbitration." *Id.* at 30–31. If such suspension has occurred and the parties still fail to make full deposits within a designated time period, the arbitrator "may terminate the proceedings." *Id.* at 31.

All these steps were followed here, including terminating the proceedings without issuance of an award. Because the arbitration had "been had" pursuant to the agreement between the firm and Tillman, the district properly lifted the stay. *See* 9 U.S.C. § 3; *Lifescan*, 363 F.3d at 1013; *Cahill*, 786 F.3d at 1294.

## B.

We review a district court's decision under Rule 41(b) for abuse of discretion.  The district court did not abuse its discretion in refusing to dismiss under Rule 41(b).

Generally, the "harsh penalty" of dismissal "should only be imposed in extreme circumstances." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).  Here, the district court reviewed Tillman's submissions and concluded that she did lack the resources to make the requested arbitration deposit.  This case, a malpractice suit involving an arbitration agreement, is relatively run-of-the-mill apart from Tillman's inability to pay.  Whether Tillman "fail[ed] . . . to comply with . . . [the] court order" to arbitrate is debatable, as she was willing to arbitrate but unable to pay for it, and the Rheingold firm could have fronted the costs but did not.  In any event, any failure to comply was, for the same reasons, not culpable and so does not merit a harsh penalty, particularly given "the public policy favoring disposition of cases on their merits," *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

We therefore affirm the district court's Rule 41(b) ruling.

## C.

The district court did err, however, in dismissing Tillman's complaint on other grounds.  To justify its dismissal, the court cited *Lifescan* as holding that it "lack[ed] the power to allow further litigation."  Far from requiring dismissal of Tillman's case, *Lifescan* points in the opposite direction.

*Lifescan* held that, despite Premier's non-payment of its share of arbitration fees, there was "no basis for an order requiring Premier to pay the fees, or compelling arbitration." 363 F.3d at 1013. *Lifescan* does not discuss how the underlying dispute should be disposed of, but it never indicates that the action should be dismissed. *See id.* *Lifescan*'s only conclusion was that compelling arbitration would be inappropriate.

This silence is telling. Nothing in the FAA requires dismissal of the litigation under *Lifescan*'s circumstances or the present ones.

The FAA provides that district courts must stay pending proceedings on issues subject to arbitration until such arbitration has been had, 9 U.S.C. § 3; compel arbitration in the event of a party's "failure, neglect, or refusal" to arbitrate, 9 U.S.C. § 4; and enforce a valid award resulting from an arbitration, 9 U.S.C. §§ 9–11. As discussed above, there is no longer a basis for a stay. There is also no arbitration award to enforce. And the Rheingold firm has not moved anew to compel arbitration. Even if it had, *Lifescan* held that there was no "failure, neglect, or refusal" to arbitrate where one party had been *unable* to pay and the AAA suspended the proceedings when the other party was unwilling to front the bill. 363 F.3d at 1011–13.

Here, the district court expressly found that Tillman lacked the resources to deposit the arbitration fee. The Rheingold firm has not pointed to any section of the FAA compelling dismissal of Tillman's claim under these circumstances. None is apparent from the statute's plain text or our case law interpreting it. In the absence of a statutory directive, the district court erred in dismissing Tillman's case.

"District courts have an obligation and a duty to decide cases properly before them," absent a firm basis for declining to do so. *See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 805 (9th Cir. 2002) (quoting *City of Tucson v. U.S. West Commc'ns, Inc.*, 284 F.3d 1128, 1132 (9th Cir. 2002) (internal quotation marks omitted).

We are mindful, of course, of the "liberal federal policy favoring arbitration" reflected in the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (internal quotation marks omitted). Our ruling today, which allows Tillman's case against the Rheingold firm to proceed despite the existence of an arbitration agreement between the two, does not run afoul of that policy. Our decision that Tillman's case may proceed does not mean that parties may refuse to arbitrate by *choosing* not to pay for arbitration. If Tillman had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's "failure, neglect, or refusal" to arbitrate. 9 U.S.C. § 4.[1] Or, in that context, the court could, and most probably

---

[1] A question may arise in such circumstances as to whether an arbitration "has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, when it has been terminated due to the nonpayment of a party who has the ability to pay but simply chooses not to. Even if such an arbitration has been terminated in accordance with the rules governing the arbitration, as Tillman's arbitration was here, it may be contrary to "the structure and purpose of the FAA" to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules. *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003). But because Tillman was unable to pay, gave notice of her inability to pay during arbitration, and "made genuine efforts to make

should, dismiss Tillman's complaint under Fed. R. Civ. P. 41(b), for failure to comply with the order to arbitrate despite its ability to do so.  Here, however, the district court found that Tillman had exhausted her funds and was "unable to pay for her share of arbitration."  As a result, the district court excused Tillman's lack of compliance with its order compelling arbitration under 9 U.S.C. § 4.

As Tillman's arbitration terminated before the merits were reached or any award issued, allowing her case to proceed in district court is the only way her claims will be adjudicated.

The outcome would likely be different if Tillman were the one seeking a stay of the district court proceedings, as that would frustrate the Rheingold firm's attempts to have the case heard in either the court or the arbitral forum.  *See Sink*, 352 F.3d at 1201.  But Tillman had not sought a stay, so 9 U.S.C. § 3's reference to a party "in default" does not apply.  *See* 9 U.S.C. § 3 (providing for a stay of federal court proceedings pending arbitration so long as "the applicant for the stay is not in default in proceeding with such arbitration.").

As *Lifescan* noted, there is "no totally satisfactory solution" to a party's nonpayment of its share of arbitration fees. 363 F.3d at 1013.  But parties have the right under the FAA to choose the rules under which their arbitration will be conducted.  *See Italian Colors Rest.*, 133 S. Ct. at 2309.  Here, Tillman and the firm chose rules that allowed the

---

alternate payment arrangements," *id.* at 1199, we need not decide how to construe 9 U.S.C. §§ 3 and 4 in the event of a party's willful nonpayment of an arbitrator's fees.

arbitrator to terminate their arbitration in the event of non-payment *without* any resulting award or judgment.  Tillman cooperated with those rules as long as she was able to.  No section of the FAA compelled the district court to dismiss her case once the arbitration had concluded in accordance with the agreed upon rules governing but without resolution.  We therefore remand to the district court with instructions to allow Tillman's case to continue in court.

**REVERSED** and **REMANDED**.