# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-01666-COA

**ROBERT JOELY WHITE**                                                 **APPELLANT**

**v.**

**COMMUNITY BANCSHARES OF MISSISSIPPI**                     **APPELLEES**
**INC., DAVID M. HUGHES AND COMMUNITY**
**BANK COAST**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2019 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ROBERT JOELY WHITE (PRO SE) |
| ATTORNEYS FOR APPELLEES: | ROBERT ALAN BYRD |
| | RUSSELL SCOTT MANNING |
| | ANDREA JACEY BOYLES |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 01/19/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Robert Joely White filed suit against Community Bancshares of Mississippi Inc., David M. Hughes, and Community Bank Coast (collectively "Community").  The litigation stemmed from a 2007 commercial real estate transaction.  The case was submitted to arbitration and terminated because White failed to pay the required fees.  Aggrieved, White filed a motion in the Harrison County Circuit Court to return the case to the court's active docket and to establish venue in Harrison County.  The circuit court denied White's motion.  White appeals.  Finding no error, we affirm the circuit court's ruling.

**FACTS**

¶2.     In 2007, White executed a promissory note in favor of Community Bank in order to fund a commercial real estate transaction in the amount of approximately $986,000. As background to the issues currently before this Court, it should be noted that White became disgruntled with Joseph Gast (a Community Bank customer from whom he purchased the property) because he thought Gast falsely represented the revenue stream for two of the laundry mats included with the property. According to White, he filed a lawsuit against Gast in 2008 and litigated until he "ran out of money" in 2013. Still aggrieved, White demanded a remedy from Community in 2016. When Community refused, this lawsuit was filed in 2017, based on allegations that Community knew Gast had made false financial representations about the revenue stream, among other things.

¶3.     Subsequent to the 2007 loan, multiple promissory notes were signed that modified the terms of the original loan, including one in 2011 and another in 2014. Arbitration agreements were executed in 2007 and again in 2011. Both were separate from the promissory notes executed at approximately the same time. The 2011 agreement provides in part that the claims subject to arbitration include:

> any claim . . . dispute or controversy whether in contract, tort or otherwise, whether pre-existing, present or future, and including statutory, common law, intentional and equitable claims, arising from or relating to any matter, including, but not limited to, this Agreement, the Transaction, any past, present or future interactions, business or dealings or interactions between the parties or between Customer and any other Covered Persons.
>
> . . . .

The agreement further provides:

Any claim between the Customer and Bank or between Customer and any other Covered Persons shall be resolved, upon the unilateral or joint election of Customer or Bank or such other Covered Persons by BINDING ARBITRATION, as used herein.

¶4.     The 2014 renewal contained a choice of venue provision in favor of Harrison County. No separate arbitration agreement was executed, nor did anything in the 2014 promissory note disavow or modify the terms of the 2011 arbitration agreement.

¶5.     On January 11, 2017, White filed suit against Community demanding $9,754,366 in "compensatory, special, consequential, and general damages" and $5,000,000 in punitive damages.  An amended complaint (to which the 2014 promissory note was attached as an exhibit) was filed on January 19, 2017.  On February 6, 2017, Community filed a motion to dismiss or to compel arbitration.  On March 15, 2017, White filed a request to withdraw and to compel arbitration.  On March 20, 2017, he paid $1,650 to the American Arbitration Association ("AAA") to demand arbitration.  On March 28, 2017, White filed an amended motion to withdraw and proceed to arbitration.  Through these pleadings, White demanded that the circuit court allow him to withdraw his complaints and grant Community's motion to compel arbitration.  He specifically stated that the "Court can use arbitration agreements submitted into evidence by the defendants Motion to compel arbitration to allow [me] to move [the] First Amended Complaint White vs Community Bank to arbitration."

¶6.     Also on March 28, 2017, White filed for Chapter 11 bankruptcy.[1]  On March 5, 2018, the circuit court entered its order to stay proceedings sua sponte, finding that the parties had

_____

[1] He states that this was necessary because the arbitration had not been undertaken yet.

submitted the case to "binding arbitration with the American Arbitration Association" and that a "stay of the proceedings [was] necessary and proper pending the final outcome of the arbitration." Preparations for the arbitration proceeded, and after numerous notices to White requesting payment of arbitration fees, on October 24, 2018, the AAA entered its order of dismissal, terminating the arbitration proceeding. The bank paid all fees assessed to it by the AAA.

¶7. On November 7, 2018, White filed a motion to return the case to the active docket and establish venue in Harrison County Court. White also argued that the 2011 arbitration agreement was invalid or not otherwise binding on him; that he could not afford arbitration, so he should be allowed to proceed in circuit court; and that a preliminary injunction was needed to stop foreclosure proceedings on the property purchased via the loan that is the subject of this case. The circuit court denied the request for injunctive relief on November 14, 2008, and heard the remaining motions on August 29, 2019. At that time, White sought to reinstate his first amended complaint despite the fact that AAA had terminated his case. The circuit court denied White's motion and dismissed his case with prejudice on October 3, 2019. Aggrieved, White appealed on November 4, 2019.

### STANDARD OF REVIEW

¶8. "[T]he standard by which an appellate court reviews a trial court's order confirming an arbitration award . . . is that questions of law are reviewed de novo and questions of fact are reviewed only for clear error." *D.W. Caldwell Inc. v. W.G. Yates & Sons Constr. Co.*, 242 So. 3d 92, 99 (¶15) (Miss. 2018) (quoting *Turquoise Props. Gulf Inc. V, Overmyer*, 81

So. 3d 1250, 1253-54 (Ala. 2011)). The level of review afforded to the decision of an arbitrator is quite narrow and provided by statute. *Robinson v. Henne*, 115 So. 3d 797, 799 (¶6) (Miss. 2013). "[E]very reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Wilson v. Greyhound Bus Lines Inc.*, 830 So. 2d 1151, 1155 (¶9) (Miss. 2002) (citation omitted).

## DISCUSSION

¶9. On appeal, White makes numerous allegations of error. The overarching issue is the circuit court's confirmation of AAA's dismissal of the case. We find White's allegations that the arbitration agreement was unconscionable and that Community failed to abide by the arbitration agreement to be waived because these allegations were not litigated before the circuit court but instead were first mentioned on appeal to this Court. *Adams v. Bd. of Sup'rs of Union Cnty.*, 177 Miss. 403, 160 So. 684, 685 (1936); *see also Heard v. Remy*, 937 So. 2d 939, 941 (¶8) (Miss. 2006) (holding that failure to assert a defense "in an answer, motion, or other responsive pleading constitutes a waiver of the defense"). For the reasons set forth below, we affirm the circuit court's ruling.

    **A.    Whether the circuit court properly affirmed the AAA's dismissal.**

¶10. In March 2017, this case was sent to arbitration based on the agreement of the parties. The governing agreement in this case states that arbitration "shall be administered by the [AAA] under its Commercial Arbitration Rules. . . ." Rule 57 in the same agreement is titled "Remedies for Nonpayment" and discusses the options the arbitrator/AAA has when a party fails to pay arbitrator compensation or administrative fees. Under the rule, if a party does not

5

make the payments owed, after notice and request for payment (Rule 57(c)), the arbitration may be suspended (Rule 57(e)), and the proceedings may be terminated if payment is not made within the time provide in the notice of suspension (Rule 57(f)). These steps were followed prior to the termination of White's case by the AAA.

¶11. On October 24, 2018, the AAA entered an order terminating the proceeding due to White's failure to pay the required fees. At no time previously had White indicated that he could not pay his portion of the required fees, nor had he provided the AAA with proof of his inability to pay. On November 7, 2018, White moved to have the case reinstated on the active docket of the Harrison County Circuit Court.

¶12. Although he cites no mandatory authority and does not address any of the factors set out in Mississippi Code Annotated section 11-15-23 (Rev. 2004) (the importance of this is addressed more fully in the following paragraphs), White maintains that parties who cannot afford to proceed in arbitration can instead pursue their claims in court despite the existence of an otherwise enforceable arbitration agreement. *See Tillman v. Tillman*, 825 F.3d 1069, 1073-74 (9th Cir. 2016) (permitting a lawsuit to go forward in court despite the existence of a valid arbitration agreement because the arbitrator had dismissed the arbitration after one party could not afford to pay her share of the arbitrator fees on the grounds that "arbitration has been had" within the meaning of the Federal Arbitration Act).

¶13. We find *Tillman* to be distinguishable from this case. Tillman, unlike White, was an unwilling participant in arbitration. *Tillman*, 825 F.3d at 1073. Additionally, Tillman's inability to pay for her part of the arbitration was properly determined through evidence. *Id.*

6

at 1074. The record before this Court is clear that White petitioned the circuit court to send the case to arbitration. Additionally, the record does not indicate that White alerted anyone of his alleged inability to pay, much less provide proof of inability to pay. He simply did not pay the bill. *Tillman* is in the minority of decisions (if not the only reported case) allowing a plaintiff to move from arbitration back to litigation. *But see Pre-paid Legal Servs. Inc. v. Cahill,* 786 F.3d 1287, 1294 (10th Cir. 2015) (lifting a stay of action pending arbitration because the employee-*defendant* failed to pay his share of arbitration fees and the arbitrators terminated arbitration).

¶14. As stated above, White demanded that his complaint be withdrawn and arbitration compelled. The circuit court sent the case to arbitration as requested. In denying White's motion to return the case to the active docket and establish venue in Harrison County, the circuit court was guided by the Mississippi Supreme Court's decision in *Sawyers v. Herrin-Gear Chevrolet Co. Inc.*, 26 So. 3d 1026 (Miss. 2010). At issue in *Sawyers* was whether an order compelling arbitration is a final, appealable judgment. *Id.* at 1034 (¶19). In making its finding that such an order is appealable, the Court emphasized that "when binding arbitration is compelled, there is nothing left for the court to do but enforce the award." *Id.* at 1032 (¶15); *id.* at 1033 (¶18) ("[T]he trial court has nothing left to do but supervise compliance with an order for arbitration or enforce an arbitration award . . . ."). Based on the forgoing language, the circuit court stated that it could not grant White's requested relief. Specifically, the circuit court held that "[o]nce this matter was compelled to arbitration . . . this Court retained only limited jurisdiction to oversee compliance with the order compelling

arbitration and then to enforce the final judgment at the conclusion of the case." While accurate in its interpretation of *Sawyers*, we believe the circuit court should have taken its analysis one step farther.

¶15. Although not as artfully drafted as an appeal by a lawyer might have been, we find that White's request to return his case to the active docket operates as a motion to vacate the AAA's decision. The only grounds that give rise to modification or vacation of an arbitration award are statutory. *Hutto v. Jordan*, 204 Miss. 30, 36 So. 2d 809, 810 (1948). White's position and the decision of the arbitrators should be analyzed under the proper statute. Mississippi Code Annotated section 11-15-23 sets out limited instances in which an arbitration award can be vacated. This statute states that a court may vacate an arbitration award upon any of the following grounds:

> (a) That such award was procured by corruption, fraud, or undue means;
>
> (b) That there was evident partiality or corruption on the part of the arbitrators, or any one of the them;
>
> (c) That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent or material to the controversy, or other misbehavior by which the rights of the party shall have been prejudiced;
>
> (d) That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final, and definite award on the subject matter was not made.

Miss. Code Ann. § 11-15-23. Our review of the evidence in the record shows that White failed to establish any statutory ground to vacate the AAA's award. The award was not procured by corruption, fraud, or undue means; there was no evident partiality or corruption

8

on the part of the arbitrators; there was no refusal to postpone the arbitration hearing upon sufficient cause; there was no misbehavior by which the parties' rights were prejudiced; nor did the arbitrators exceed or execute their powers in a manner in which the award was imperfectly made.

¶16. The circuit court's failure to conduct an analysis under section 11-15-23 does not require us to remand this case. We have reviewed the record de novo, giving no deference to the circuit court's rationale or conclusions. "Accordingly, this Court's decision on appeal does not turn on or require approval or disapproval of the precise reasoning that the circuit court gave for its ruling. This Court 'may affirm a circuit court if the correct result is reached, even if the circuit court reached the correct result for the wrong reasons.'" *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 526 (¶31) (Miss. Ct. App. 2017) (quoting *Methodist Hosp. of Hattiesburg Inc. v. Richardson*, 909 So. 2d 1066, 1070 (¶7) (Miss. 2005)). Arbitration is "a binding, bargained-for, dispute-resolution method, and . . . those matters arbitrated should not be retried by the courts of this state." *D.W. Caldwell Inc.*, 242 So. 3d at 100 (¶19) (citation omitted). White demanded arbitration, and the circuit court should not be required to entertain this action. The decision of the circuit court on this issue is affirmed.

> **B.** **Whether the trial court erred in finding that the 2011 arbitration agreement was not discharged by the 2014 promissory note.**

¶17. White argues that the Bank concealed the fact that no separate arbitration agreement was executed at the time the parties executed the 2014 promissory note. He maintains that the Bank withheld production of the 2014 promissory note until after he had agreed to

9

arbitration. As stated by the circuit court, this argument is flawed because White attached the 2014 promissory note as an exhibit to his February 19, 2017 amended complaint. White was well aware of the 2014 promissory note and is estopped from making any argument otherwise.

¶18. As additional grounds for discharge of the 2011 arbitration agreement, White argues that the venue clause in the 2014 promissory note was controlling and that the circuit court erred in dismissing his claim for enforcement. As stated by the circuit court "[t]he 2014 promissory note does not specifically rescind the 2011 arbitration agreement nor does it deal with the subject matter of arbitration in any comprehensive manner whatsoever so as to completely disavow the parties' separate agreement to arbitrate." The 2011 arbitration agreement was not discharged by the 2014 promissory note, nor do the two documents conflict. Had neither party moved to arbitrate, the venue clause in the 2014 promissory note would have been enforceable, and the case could have been litigated to resolution in Harrison County.

¶19. Despite White's arguments, once this case was sent to arbitration based on the agreement of the parties, the circuit court had only limited jurisdiction to oversee compliance with the order compelling arbitration and to enforce the final judgment at the conclusion of the case. *Sawyers*, 26 So. 3d at 1032 (¶15). Although it had no obligation to make a determination on this issue, we find no fault with the circuit court's decision. The circuit court did not err on this issue.

     **C.**     **Whether the circuit court erred in dismissing White's claims with prejudice.**

¶20. White argues that the circuit court's dismissal of his claims with prejudice violates his Seventh Amendment right to a trial. This argument is misguided, as the Seventh Amendment has no application to actions arising under state law. *Edmonds v. State*, 234 So. 3d 286, 293 n.l (Miss. 2017); *City of Monterey v. Del Monte Dunes at Monterey Ltd.*, 526 U.S. 687, 719 (1999). The circuit court did not err in its dismissal of White's claims with prejudice.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**